Peter M. Rehon (SBN 100123)
Steven M. Wheat (SBN 286974)
REHON & ROBERTS
A Professional Corporation
830 The Alameda
San Jose, CA 95126
Telephone: (408) 494-0900
Facsimile: (408) 494-0909
Email: prehon@rehonroberts.com
swheat@rehonroberts.com

Attorneys for Creditors DONALD E. VANNI, individually and as trustee of the Donald E. Vanni and Sharon L. Vanni Revocable Inter Vivos Trust; DONALD E. VANNI AND SHARON L. VANNI REVOCABLE INTER VIVOS TRUST; and CHRIS VANNI

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>AMIR SAFAKISH,<br><br>        Debtor, | Case No. 18-50769 MEH 13<br><br>Chapter 13<br><br>**MOTION OF THE VANNI CREDITORS TO DISMISS CASE OR, IN THE ALTERNATIVE, CONVERT CHAPTER 13 CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1307(c)**<br>_____<br><br>Date:       June 14, 2018<br>Time:       9:30 AM<br>Courtroom:  3020<br>Location:   280 South First Street<br>                 San Jose, CA 95113<br><br>Judge: Hon. M. Elaine Hammond |

# TABLE OF CONTENTS

I. STATEMENT OF FACTS ........................................................................................... 1

II. ARGUMENT ............................................................................................................... 6

    A. The Bankruptcy Court may dismiss or convert a Chapter 13 Case to Chapter 7 for cause. ........................................................................................................... 6

    B. The Debtor is not eligible for relief under Chapter 13 because his secured debts are not less than $1,184,200, as required by 11 U.S.C. §109(e). ............................ 7

    C. The Debtor also is likely not eligible for relief under Chapter 13 because his noncontingent, liquidated, unsecured debts are not less than $394,725, as required by 11 U.S.C. §109(e). .................................................................................. 7

        1. Moving Parties' Claims Are Noncontingent ............................................... 8

        2. Moving Parties' Claims Are Liquidated. .................................................... 8

        3. The Debtor's failure to schedule his 2015, 2016, and 2017 tax liability to the IRS and the FTB is highly suspect, and it is likely that this liability will cause the Debtor's unsecured claims to exceed the statutory limit for Chapter 13. ........................................................................ 9

    D. The Debtor's Plan was not proposed in good faith, and the action of the Debtor in filing the Petition was not in good faith, in violation of 11 U.S.C. §1325(a)(3) and (a)(7). .................................................................................................................. 9

    E. Dismissal of this Case or Conversion to Chapter 7 is in the Best Interests of Creditors and the Estate. ...................................................................................... 11

    F. Public Policy favors dismissal of the Debtor's Case. ......................................... 11

III. CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Cassel v. Superior Court* (2011) 51 Cal.4th 113.................................................................................. 12

*Elden v. Superior Court* (1997)], 53 Cal.App.4th 1497 ....................................................................... 12

*Fisher v. Superior Court* (1980) 103 Cal.App.3d 434 .......................................................................... 11

*Frankel v. Board of Dental Examiners* (1996) 46 Cal.App.4th 534 ................................................... 11

*In re Albano*, 55 B.R. 363, 366-367 (N.D.Ill. 1985) .............................................................................. 8

*In re Alt*, 305 F.3d 413, 422 (6th Cir. 2002) ......................................................................................... 11

*In re Cabral*, 285 B.R.563 (1st Cir. B.A.P.2002) ................................................................................... 7

*In re Eisen*, 14 F.3d 469 (9th Cir. 1994) ................................................................................................ 9

*In re Enriquez*, 315 B.R. 112, 122 (Bankr.N.D.Cal. 2004) ................................................................... 8

*In re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987) ................................................................................. 8

*In re Goeb*, 675 F.2d 1386 (9th Cir. 1982) .......................................................................................... 10

*In re Leavitt*, 171 F.3d 1219 (9th Cir. 1999) ....................................................................................... 10

*In re Lehr*, 479 B.R. 90 (Bankr. N.D. Cal. 1990) ............................................................................... 10

*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 910 .......................................................................... 11

*In re Marriage of Woolsey* (2013) 220 Cal.App.4th 881 .................................................................... 12

*In re Nicholes*, 184 B.R. 82, 88 (9th Cir. B.A.P. 1995) ..................................................................... 8, 9

*In re Slack*, 187 F.3d 1070 (9th Cir. 1999) ........................................................................................... 8

*In re Sylvester*, 19 B.R. 671, 673 (9th Cir. B.A.P. 1982) ..................................................................... 8

*In re Toronto*, 165 B.R. 746 (Bankr. D. Conn. 1994) ........................................................................ 11

*Rudd v. Laughlin*, 866 F.2d 1040 (8th Cir. 1989) ................................................................................ 7

*United States v. Verdunn*, 89 F.3d 799, 802 (11th Cir. 1996) ............................................................. 8

*Villa v. Cole* (1992) 4 Cal.App.4th 1327 ............................................................................................ 11

**Statutes**

11 U.S.C. §109(e) ............................................................................................................................ *passim*

11 U.S.C. §1307(c) ................................................................................................................................. 6

11 U.S.C. §1325 .................................................................................................................... 10

Code Civ. Proc. §664.6 ........................................................................................................ 5, 8

iii

The Motion of Donald E. Vanni, individually and as trustee of the Donald E. Vanni and Sharon L. Vanni Revocable Inter Vivos Trust, Donald E. Vanni And Sharon L. Vanni Revocable Inter Vivos Trust, and Chris Vanni (collectively, "Moving Parties" or "Vanni Creditors") to dismiss the above-captioned case or, in the alternative, convert the above-captioned Chapter 13 case to Chapter 7 (the "Motion") respectfully represents as follows:

Notice is hereby given that on June 14, 2018 at 9:30 AM or as soon thereafter as the matter may be heard at the United States Bankruptcy Court, 280 South First Street, courtroom number 3020, San Jose, California, Moving Parties will move the Court for an order dismissing the above-captioned case or, in the alternative, converting the Debtor's Chapter 13 case to Chapter 7 pursuant to 11 U.S.C. §1307(c).

## I. STATEMENT OF FACTS

Creditor and moving party Donald E. Vanni is a trustee of the Defendant Donald E. and Sharon L. Vanni Revocable Inter Vivos Trust (the "Vanni Trust"). Creditor and moving party the Vanni Trust is the owner of Unit 2, a commercial condominium located at 16170 Vineyard Boulevard, Morgan Hill, California (the "Vanni Unit"). Creditor and moving party Chris Vanni is attorney-in fact for the Vanni Trust and is a member of the Board of Directors and President of the Morgan Hill Vineyard Owners' Association (the "Association"). (Declaration of Chris Vanni ("Vanni Decl."), ¶¶ 1, 3; Declaration of Peter M. Rehon ("Rehon Decl."), ¶ 3.)

The Debtor Amir Safakish (the "Debtor") owns Unit 1, a commercial condominium at the Vineyard also located at 16170 Vineyard Boulevard, Morgan Hill, California (the "Debtor's Unit"). The Debtor is also a member of the board of directors of the Association and assistant secretary. (Vanni Decl., ¶ 3; Rehon Decl., ¶ 3.)

The Association is an association formed to act as the owners' association for the Vineyard, which is a common interest development formed and operated under and pursuant to California law. The Debtor and the Vanni Trust are the only members and shareholders of the Association. The Vanni Trust is the majority shareholder (with an approximately 70% ownership interest), and the Debtor is a minority shareholder (with an approximately 30% ownership interest). Donald E. Vanni is a director and Chris Vanni is an officer and director of

1

MOTION TO DISMISS CASE OR, IN THE ALTERNATIVE, CONVERT CHAPTER 13 CASE TO CHAPTER 7
Case: 18-50769    Doc# 37    Filed: 05/17/18    Entered: 05/17/18 10:57:21    Page 5 of 16

the Association on behalf of the Vanni Trust (the "Vanni Directors"). The Debtor is also an officer and director of the Association. (Vanni Decl., ¶ 3; Rehon Decl., ¶ 3.)

Moving Parties are also defendants in a lawsuit filed by the Debtor on May 9, 2016 in the Santa Clara Superior Court entitled *Amir Safakish v. Donald E. Vanni, et al.* (the "Safakish Action"). The Debtor's original complaint alleged six causes of action against the Moving Parties, as well as Sharon L. Vanni, the wife of Moving Party Donald Vanni and mother of Moving Party Chris Vanni. The Court dismissed Sharon L. Vanni as a defendant on March 17, 2017. The Moving Parties demurred to the original complaint, which the Court sustained in part and overruled in part on December 20, 2016. The Debtor filed his first amended complaint on February 8, 2017, alleging twelve causes of action against Moving Parties and the Association. The Moving Parties demurred again, which the Court sustained with respect to the purported derivative claims on grounds of uncertainty. The Debtor then filed his second amended complaint on or about June 5, 2017, alleging eighteen causes of action against Moving Parties and the Association. (Vanni Decl., ¶¶ 1, 3; Rehon Decl., ¶¶ 4, 5, and 6, Ex. 1.)

The litany of grievances alleged in his second amended complaint is a testament to the Debtor's unhappiness with the actions taken by the Association and the Moving Parties relative to their management of the Association and the Vineyard. As the Honorable Mary E. Arand, the judge presiding over the Safakish Action, noted in her May 12, 2017 demurrer order, "Plaintiff's central grievance, although taking many forms, is that he wanted to pay less out of his own pockets for maintenance of the Vineyard." The Debtor's discovery responses complain that the Moving Parties hired vendors and various contractors who have "consistently overcharged for their services and in many cases performed services poorly." The Debtor also alleges in his second amended complaint that he does not believe the Association is required by California law and that it should be rescinded. (Rehon Decl., ¶ 6.)

The Moving Parties contend that they were authorized to make the decisions complained of in the second amended complaint by the Association's governing documents. The 1997 and 2016 CC&R's provide that the voting power is based on the square footage of the Subject Building, and the unit owned by Moving Party Vanni Trust accounts for 10,752 of the Subject

2

Building's 15,360 square feet, or approximately 70%. It is undisputed that the Debtor is a minority shareholder in the Association and that the Vanni Trust is the majority shareholder. Section 3.1 of the 1997 Bylaws empowers the directors of the Association to "do any and all things" which "may be necessary for or incidental to the exercise of the express powers of the Association or for the peace, health, comfort, safety or general welfare of the Members." (Rehon Decl., ¶ 7.)

Additionally, the Moving Parties contend that the decisions made on behalf of the Association were the exercise of valid business judgments, and that Section 8.4 of the 1997 Bylaws precludes a director's liability for any such decision(s). The Moving Parties have cross-complained against the Debtor, alleging counts for declaratory relief and equitable indemnity. The Moving Parties' declaratory relief claims ask that the state court find that the Association and its governing instruments were validly formed, and that all of the actions complained of in the Debtor's second amended complaint were within the scope of the business judgment rule. (Rehon Decl., ¶ 8.)

The Association has also cross-complained, alleging counts for judicial foreclosure, breach of fiduciary duty, collection of delinquent assessments, and declaratory relief. (Rehon Decl., ¶ 9.)

As a result of the Debtor's failure to pay his assessments as part of his ownership of the Debtor's Unit, the Association, after due and proper notice in accordance with California law and the documents governing the Association, recorded an Assessment lien on February 9, 2017. The total amount owing on the Association's Assessment Lien as of the Petition date is $135,337.19. (Vanni Decl., ¶ 8, Exx. 8 and 9.)

On December 4, 2017, Moving Parties received notice that Debtor's attorney in the Safakish Action, Brad Mokri, was withdrawing as counsel, and that Debtor was substituting in *in propria persona*. (Rehon Decl., ¶ 10.)

In January 2018, the Debtor engaged a new attorney, Jeffery Perkins, to represent him in trying to resolve this litigation, and in early February 2018, Debtor and the Vanni Creditors, and their respective counsel, entered into and signed a written mediation agreement (the "Mediation

3

Agreement") selecting a mediator, Sanford Kingsley, Esq. (the "Mediator") and agreeing to the confidentiality of the mediation process. (Rehon Decl., ¶ 11, Ex. 2.)

A mediation between the parties commenced on February 14, 2018, and Moving Parties, the Association, their counsel, the Debtor and his counsel attended this mediation. The mediation lasted all day, and while it did not result in a settlement, the parties agreed to continue the mediation to March 19, 2018. (Rehon Decl., ¶ 12.)

On March 19, 2018, the Moving Parties, the Association, their counsel, the Debtor and his counsel attended a second full day of mediation with the mediator, at the conclusion of which the parties negotiated and signed a written term sheet (the "Settlement Term Sheet") memorializing a settlement of this matter. As part of the Settlement Term Sheet, the Debtor agreed to the filing of an amended assessment lien against the Debtor's Unit in the amount of $275,000 and also agreed to pay $12,000 to the Association on April 1, 2018. (Vanni Decl., ¶ 10; Rehon Decl., ¶ 13, Ex. 3.)

The Term Sheet also requires the parties to take action to record an amended lien against Debtor's condominium unit in the amount of $275,000 (which would amend the Association's secured claim of $135,337.19 as of the Petition date to add an additional $139,662.81 as of the petition date) to secure payment of a portion of the settlement due, and also requires Debtor to sell his unit and requires the Vanni Creditors to buy Debtor's unit if he does not sell the unit. All of these actions are time-sensitive and market-dependent. For instance, if the amended lien is not recorded promptly, its lien priority may be jeopardized. (Rehon Decl., ¶ 15.)

The Settlement Term Sheet specifically provides, among other things, that:

(a) "The Association's current lien is amended to a total of $275,000, which will be placed on Mr. Safakish's unit …." (Paragraph 1.)

(b) "Mr. Safakish agrees to prepay 12 months worth of assessments at a rate of $1,000/month due upon execution of the settlement agreement for $12,000 …." (Paragraph 2.)

(c) "The defendants will prepare a formal settlement agreement, enforceable under CCP section 664 et seq. including dismissal of all claims, and with mutual

4

        releases under 1542 except for obligations created under the settlement agreement…." (Paragraph 5.)

   (d)    "Should the parties not execute a formal settlement agreement, this agreement shall be binding and enforceable upon execution under CCP 664.6." (Paragraph 5.)

(Rehon Decl., ¶ 15.)

The following day, on March 20, 2018, Debtor sent an email indicating that he was not going to comply with the Settlement Term Sheet after all. Specifically he stated that he wished to "cancel it or change[ ]" it. (Vanni Decl., ¶ 11; Rehon Decl., ¶ 14, Ex. 4.)

On April 4, 2018, prior to 10:00 a.m., counsel for the Moving Parties gave notice to the Debtor and his counsel, Jeffery Perkins, that the Moving Parties and the Association would apply to the Superior Court to obtain an order shortening time to set a hearing on a motion to enforce the Settlement Term Sheet as a judgment pursuant to California Code of Civil Procedure section 664.6. (Rehon Decl., ¶ 16.)

Later that same day, April 4, 2018, the Moving Parties were notified that the Debtor had filed his petition for relief under Chapter 13 of the Bankruptcy Code. (Rehon Decl., ¶ 17.)

On May 2, 2018, the Debtor filed his schedules, Statement of Affairs, and Chapter 13 plan. On his Statement of Affairs, in response to questions 1 and 3, the Debtor claimed that he was not married and also claimed that he had not, within the last 8 years, ever lived with a spouse in a community property state. (Vanni Decl., ¶ 4.)

The Debtor's statements regarding his marital status are contradicted by the two deeds recorded against his residence, and four deeds of trust recorded against his residence and the Debtor's Unit, all of which reflect that he holds title to both properties as a married man. The four deeds of trust represent representations the Debtor made to his secured creditors, Bank of America, Bank of the West, Wells Fargo Bank, and Keypoint Credit Union, all federally insured financial institutions, that he was married, which representations were consistent with representations the Debtor made to the Moving Parties that he was, and at all relevant times, has been, a married man. (Vanni Decl., ¶ 5, Exx. 1-6.)

5

On his Schedule D, filed on May 2, 2018, the Debtor failed to disclose the Association's assessment lien. The amount of this assessment lien as of the petition date, $135,337.19, would cause his secured claims to total $1,204,083.15 which would exceed the limit for secured claims under 11 U.S.C. section 109(e), which is $1,184,200. (Vanni Decl., ¶¶ 8-9, Exx. 8-9.)

On his Schedules E/F, filed on May 2, 2018, the Debtor failed to disclose the Settlement Term Sheet and his consent to the recordation of an amended assessment lien in the amount of $275,000, the unsecured amount of which is $139,662.81 as of the petition date. Debtor also failed to disclose his obligation to pay $12,000 under the Settlement Term Sheet. When adding these amounts to the amounts disclosed in the Debtor's schedules E/F, the Debtor's unsecured claims total $326,134.81, which is still within the statutory limit for unsecured claims, $394,725, specified in 11 U.S. section 109(e). (Vanni Decl., ¶ 14, Ex. 9.)

However, in the Debtor's Schedule E/F, the Debtor also states that he owes no taxes to the Franchise Tax Board for the years 2015, 2016, and 2017, and fails to list any taxes owing to the Internal Revenue Service for the same years. Given the fact that the Debtor just lost an appeal of an IRS determination that he owed back taxes and penalties for the years 2006 and 2007 that the Debtor claims totals $71,000, it is highly unlikely that the Debtor owed no taxes to either the FTB or the IRS for the years 2015, 2016, and 2017. (Rehon Decl., ¶ 19, Ex. 7.) Given the Debtor's failure to disclose material secured and unsecured claims, and given his current tax situation, it is likely that his unsecured tax liability for the years 2015, 2016, and 2017 will cause his unsecured claims to exceed the statutory limit of $394,725 specified in 11 U.S.C. section 109(e).

## II. ARGUMENT

### A. The Bankruptcy Court may dismiss or convert a Chapter 13 Case to Chapter 7 for cause.

Bankruptcy Code §1307(c) provides that the court may convert a chapter 13 case to chapter 7, or may dismiss a chapter 13 case, whichever is in the best interests of creditors and the estate, upon request of a party in interest. (11 U.S.C. §1307(c).) Subsection 1307(c) enumerates eleven specific occurrences which constitute sufficient cause for the dismissal or conversion of a

6

chapter 13 case to chapter 7, but those grounds are not exhaustive. For example, courts have held that a chapter 13 case may be converted to chapter 7 or dismissed if the case was filed in bad faith or if the debtor is not eligible for relief under chapter 13 because his debts exceed the limits specified in Section 109(e). (See, for example, *In re Cabral*, 285 B.R.563 (1st Cir. B.A.P.2002), wherein the appellate panel affirmed the decision of the bankruptcy court to convert a chapter 13 case to chapter 7 based upon the debtor's bad faith, and *Rudd v. Laughlin*, 866 F.2d 1040 (8th Cir. 1989), wherein the appellate court affirmed the bankruptcy court's order converting a chapter 13 case to chapter 7 because the debtors' debts exceeded the limits specified in Section 109(e).)

As will be shown below, the Debtor is not eligible for chapter 13 relief, the Debtor did not file his Petition in good faith, and dismissal of this case or at least conversion to chapter 7 is in the best interests of creditors and the estate.

**B.  The Debtor is not eligible for relief under Chapter 13 because his secured debts are not less than $1,184,200, as required by 11 U.S.C. §109(e).**

On his Schedule D, filed on May 2, 2018, the Debtor fails to disclose the Association's assessment lien. The amount of this assessment lien, $135,337.19, would cause his secured claims to total $1,204,083.15 which would exceed the limit for secured claims under 11 U.S.C. section 109(e), which is $1,184,200. For this reason alone the Debtor is not eligible for Chapter 13 relief.

**C.  The Debtor also is likely not eligible for relief under Chapter 13 because his noncontingent, liquidated, unsecured debts are not less than $394,725, as required by 11 U.S.C. §109(e).**

Only an individual that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $394,725 may be a debtor in a chapter 13 case. (11 U.S.C. §109(e).) There is no dispute that the Debtor failed to disclose his obligation to pay $275,000 under the Settlement Term Sheet of which $139,662.81 is unsecured, and also failed to disclose $12,000 owing under the Settlement Term Sheet, which is also unsecured, noncontingent, and liquidated.

7

### 1. Moving Parties' Claims Are Noncontingent

It is well-settled that "a debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petiton." (*In re Nicholes*, 184 B.R. 82, 88 (9th Cir. B.A.P. 1995), citing *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987).) "Thus, debts of a contractual nature are not contingent." (*Nicholes*, 184 B.R. at 88.) For instance, it is well-settled that a debt owed by a guarantor is noncontingent where the principal obligor has defaulted. (*In re Enriquez*, 315 B.R. 112, 122 (Bankr.N.D.Cal. 2004).) Liability on a contract is noncontingent once the contract is made, even if liability is subject to being avoided by some later occurrence. (*In re Albano*, 55 B.R. 363, 366-367 (N.D.Ill. 1985).)

In the present case, the Debtor agreed to allow an amended assessment lien to be filed against the Debtor's Unit in the amount of $275,000 of which is $139,662.81 is unsecured. The Debtor also agreed to pay $12,000 under the settlement that he did not disclose. These amounts were agreed to be enforceable by judgment under state law, Code of Civil Procedure section 664.6. Moving Parties' and the Association's claims are noncontingent.

### 2. Moving Parties' Claims Are Liquidated.

While the Debtor may now find his agreement to settlement unacceptable to him, the Ninth Circuit has held that a disputed debt is nevertheless liquidated if the amount due is readily determinable. In *In re Slack*, 187 F.3d 1070 (9th Cir. 1999), the Ninth Circuit stated:

> We hold that a debt is liquidated if the amount is readily ascertainable, notwithstanding the fact that the question of liability has not been fully decided. . . So long as a debt is subject to ready determination and precision in computation of the amount due, then it is considered liquidated and included for eligibility purposes under §109(e), regardless of the dispute.

(*Id*. at 1075.) "Therefore, the concept of a liquidated debt relates to the amount of liability, not the existence of liability."(*Id*. at 1074, citing *United States v. Verdunn*, 89 F.3d 799, 802 (11th Cir. 1996).) A disputed debt is nonetheless liquidated if the amount is capable of "ready determination and precision in computation of the amount due." (*In re Sylvester*, 19 B.R. 671, 673 (9th Cir. B.A.P. 1982).) In *Sylvester*, the Bankruptcy Appellate Panel rejected the view that "a debt is not liquidated if there is a substantial dispute regarding liability or amount". (*Id*. at

8

MOTION TO DISMISS CASE OR, IN THE ALTERNATIVE, CONVERT CHAPTER 13 CASE TO CHAPTER 7
Case: 18-50769    Doc# 37    Filed: 05/17/18    Entered: 05/17/18 10:57:21    Page 12 of 16

673-674.) "The test for 'ready determination' is whether the amount due is fixed or certain or otherwise ascertainable by reference to any agreement or by a simple computation." (*Nicholes*, *supra*, 184 B.R. at 89.) "It is important to emphasize today that the bottom line is that §109(e) calculations depend on 'ready determination,' not upon the existence or absence of disputes." (*Nicholes, supra*, 184 B.R. at 91.)

In the present case, Moving Parties' claims, even if disputed by the Debtor, are nevertheless liquidated since the claim amounts can be readily and precisely determined by an arithmetic calculation of the amounts owed by the Debtor.

**3. The Debtor's failure to schedule his 2015, 2016, and 2017 tax liability to the IRS and the FTB is highly suspect, and it is likely that this liability will cause the Debtor's unsecured claims to exceed the statutory limit for Chapter 13.**

As noted above, the Debtor also states in his schedules that he owes no taxes to the Franchise Tax Board for the years 2015, 2016, and 2017, and fails to list any taxes owing to the Internal Revenue Service for the same years. Given the fact that the Debtor just lost an appeal of an IRS determination that he owed back taxes and penalties for the years 2006 and 2007 that the Debtor claims totals $71,000, it is highly unlikely that the Debtor owed no taxes to either the FTB or the IRS for the years 2015, 2016, and 2017. Given the Debtor's failure to disclose material secured and unsecured claims, and given his current tax situation, it is likely that his unsecured tax liability for the years 2015, 2016, and 2017 will cause his unsecured claims to exceed the statutory limit of $394,725 specified in 11 U.S.C. section 109(e).

For this additional reason, the Debtor is also likely not eligible for Chapter 13 relief.

**D. The Debtor's Plan was not proposed in good faith, and the action of the Debtor in filing the Petition was not in good faith, in violation of 11 U.S.C. §1325(a)(3) and (a)(7).**

In *In re Eisen*, 14 F.3d 469 (9th Cir. 1994), the court stated that the same standard for determining the existence of bad faith applies whether the court is determining if a petition has been filed in bad faith or whether a plan has been proposed in bad faith. Bad faith is determined based on the totality of the circumstances, as stated by the Ninth Circuit in *In re Goeb*, 675 F.2d

9

MOTION TO DISMISS CASE OR, IN THE ALTERNATIVE, CONVERT CHAPTER 13 CASE TO CHAPTER 7
Case: 18-50769   Doc# 37   Filed: 05/17/18   Entered: 05/17/18 10:57:21   Page 13 of 16

1386 (9th Cir. 1982), and the factors to be considered were laid out by the Ninth Circuit in *In re Leavitt*, 171 F.3d 1219 (9th Cir. 1999). The four *Leavitt* factors are:

(1) Whether the debtor misrepresented facts in his or her petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed the Chapter 13 petition or plan in an inequitable manner;

(2) The debtor's history of filings and dismissals;

(3) Whether the debtor's only purpose in filing for Chapter 13 protection is to defeat state court litigation; and

(4) Whether egregious behavior is present.

To determine bad faith, the court must review the totality of the circumstances. Such an analysis examines "whether the debtor misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner." *Leavitt*, *supra*, 171 F.3d at 470 (internal quotation omitted); see also*, In re Lehr*, 479 B.R. 90 (Bankr. N.D. Cal. 1990) (dismissal appropriate where debtor made knowing and fraudulent false statements in filing schedules). Moreover, "[b]ad faith exists where the debtor only intended to defeat state court litigation." *Leavitt*, *supra*, 171 F.3d at 470.

Here, the Debtor did not propose his Plan in good faith, nor did he file the Petition in good faith, as required under 11 U.S.C. §1325(a)(3) and (a)(7). First, the Debtor filed his Petition the day before Moving Parties were going to apply to the Santa Clara County Superior Court for the enforcement of the settlement the Debtor agreed to in the written Settlement Term Sheet. Second, since the Debtor has significant assets compared to his debts, it is evident that the sole reason he filed bankruptcy was to defeat Moving Parties' efforts to enforce the settlement of the state court litigation. Third, the Debtor misrepresented his marital status, failed to disclose the Association's secured claim, and failed to disclose his financial obligations under the Settlement Term Sheet, all to create the false impression that he was eligible for relief under Chapter 13 of the Bankruptcy Code. Fourth, after filing for bankruptcy, the Debtor sent email communications to the Vanni Creditors indicating that he had only sought bankruptcy protection to avoid the settlement reached in the state court action. (*See* Exhibits 10-13 to Declaration of Chris Vanni.)

10

MOTION TO DISMISS CASE OR, IN THE ALTERNATIVE, CONVERT CHAPTER 13 CASE TO CHAPTER 7
Case: 18-50769    Doc# 37    Filed: 05/17/18    Entered: 05/17/18 10:57:21    Page 14 of 16

The facts in the present case, therefore, warrant a finding that the Debtor filed his petition and proposed his plan in bad faith. The facts, including the Debtor's misrepresentations and his concealment of claims to create the false impression that he is eligible for Chapter 13 relief, and his use of this bankruptcy to evade a judgment in state court, all constitute egregious conduct that warrant a strong response from the Court. As such, the Moving Parties request that the Court dismiss the Chapter 13 petition or convert it to Chapter 7.

### E. Dismissal of this Case or Conversion to Chapter 7 is in the Best Interests of Creditors and the Estate.

Based on the assets and liabilities of the Debtor, the Debtor has the resources to pay his creditors in full. A prompt resolution of the state court litigation would leave the Debtor with more than sufficient assets to pay his creditors in full.

In a case such as this, where the debtor is not eligible for Chapter 13 relief and he did not act in good faith, the court should exercise its discretion and dismiss the case or at least convert the case to Chapter 7 if doing so is in the best interests of creditors and the estate. To that end, this case bears similarities to *In re Toronto*, 165 B.R. 746 (Bankr. D. Conn. 1994), wherein the court found that the debtors were not eligible for Chapter 13 due to §109(e) and converted the case to Chapter 7.

Chapter 13 relief is reserved for the "honest but unfortunate debtor." (*In re Alt*, 305 F.3d 413, 422 (6th Cir. 2002).) As evidenced by the facts described above, one may reasonably conclude that the Debtor is neither honest nor unfortunate. For the reasons stated above, Moving Parties contend that dismissal of the case or conversion of this case to Chapter 7 would best serve the interests of creditors and the estate since conversion to Chapter 7 will permit the orderly liquidation of the Debtors' assets for the benefit of creditors and the estate.

### F. Public Policy favors dismissal of the Debtor's Case.

In civil matters generally, there is a strong policy favoring settlement of litigation. (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 910; *Frankel v. Board of Dental Examiners* (1996) 46 Cal.App.4th 534, 552; *Villa v. Cole* (1992) 4 Cal.App.4th 1327, 1338; *Fisher v. Superior Court* (1980) 103 Cal.App.3d 434, 436, 441.)

11

MOTION TO DISMISS CASE OR, IN THE ALTERNATIVE, CONVERT CHAPTER 13 CASE TO CHAPTER 7
Case: 18-50769    Doc# 37    Filed: 05/17/18    Entered: 05/17/18 10:57:21    Page 15 of 16

In California, "[t]he Legislature has enacted statutes to further the strong public policy of encouraging out-of-court resolution of disputes. (*Elden, supra* [*Elden v. Superior Court* (1997)], 53 Cal.App.4th 1497 at pp. 1507-1509; see also *Cassel v. Superior Court* (2011) 51 Cal.4th 113, 118.) The Legislature has imposed specific requirements for settlement agreements and provided an expedient method of enforcing them." (*In re Marriage of Woolsey* (2013) 220 Cal.App.4th 881, 899.)

Here, the Debtor's attempt to use this bankruptcy proceeding to evade the consequences and judicial enforcement of his own mediated settlement agreement is not only an abuse of the bankruptcy process, it is designed to thwart the strong public policy favoring settlement under California law. The Debtor's actions are particularly egregious here because it was he who filed the lawsuit against Moving Parties, and there is no dispute that he signed a written mediation agreement and written settlement term sheet. To allow the Debtor to use this bankruptcy in this manner would be wrong, and he should – must – be required to submit this dispute to the Superior Court where it belongs, and not burden this Court and his creditors.

### III. CONCLUSION

For the foregoing reasons, Moving Parties request the Court to dismiss this case or convert this case to one under Chapter 7.

DATED: May 17, 2018

REHON & ROBERTS
A Professional Corporation

By: /s/ Peter M. Rehon
Peter M. Rehon
Steven M. Wheat
Creditors DONALD E. VANNI, individually and as trustee of the Donald E. Vanni and Sharon L. Vanni Revocable Inter Vivos Trust; DONALD E. VANNI AND SHARON L. VANNI REVOCABLE INTER VIVOS TRUST; and CHRIS VANNI

12

MOTION TO DISMISS CASE OR, IN THE ALTERNATIVE, CONVERT CHAPTER 13 CASE TO CHAPTER 7
Case: 18-50769    Doc# 37    Filed: 05/17/18    Entered: 05/17/18 10:57:21    Page 16 of 16