LARS T. FULLER (No. 141270)
SAM TAHERIAN (No. 170953)
THE FULLER LAW FIRM, P.C.
60 No. Keeble Ave.
San Jose, CA 95126
Telephone: (408)295-5595
Facsimile: (408) 295-9852

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>AMIR SAFAKISH<br><br>Debtor | CASE No. 18-50769 MEH 13<br><br>Chapter 13<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REJECT EXECUTORY CONTRACT**<br><br>Date: August 13, 2018<br>Time: 9:30 AM<br>Courtroom: 3020<br>Location: 280 South First Street<br>San Jose, CA 95113<br>Judge: Hon. M. Elaine Hammond |

COME NOW Debtor Amir Safakish and moves this court to authorize him to reject the mediation agreement signed by Debtor, Crhis Vanni, Don Vanni, and Morgan Hill Vineyard Owners Association.

## I. NOTICE

No notice of motion is provided because parties have stipulated to the briefing schedule and the hearing date.

## II. REQUEST FOR JUDICIAL NOTICE

Pursuant to FRE 201, Debtor prays that the court take judicial notice of all of the documents of this case, on file with this court, including declarations of Chris Vanni (entered on the docket as document number 32) and Peter Rehon, Esq. (entered on the docket as document number 33) and the Exhibits attached thereto.

Debtor further prays that the court take judicial notice of the records of the California Secretary of State relating to corporate entity number C3304179, a corporation titled "Morgan Hill Vineyard Owners' Association."

## III. FACTUAL AND PROCEDURAL HISTORY

Debtor believes none of the facts below are subject to dispute.

Debtor, on one hand, and The Donald and Sharon Vanni Trust each own partial square footage in an industrial condominium. The Donald Vani is a trustee of the Donald and Sharon Vanni Trust. The Trust has majority square footage, and based thereon, control of the condominium association. Chris Vanni, the son of Don Vanni, is a principal of the condominium association, titled President of the Morgan Hill Vineyard Owners Association, a California corporation.

Chris, Don, and Shaaron Vanni, along with the trust and the association, will be referred to collectively as "Creditors."

Debtor asserts that condominium association dues are too high because of breach of fiduciary duties and insider dealings of Creditors. Creditors disagree. Parties attempted to negotiate their dispute, but were unsuccessful.

Debtor then filed a complaint against all Creditors in Santa Clara County Superior Court. At least some of the Creditors filed a cross-complaint. Earlier this year, the parties attended a lengthy mediation, executing a purported Mediation Agreement. There were certain irregularities during the mediation, but those issues are not before the court today.

FULLER LAW FIRM, P.C.
60 N. KEEBLE AVE
SAN JOSE, CA 95126
(408) 295-5595

Attending the mediation were Debtor on the one hand, and Chris and Don Vanni. Chris Vanni, as president of the Association, represented the Association. After two days of negotiations a Mediation Agreement was signed by the parties and counsel. A copy of the purported mediation agreement is attached to the declaration of Chris Vanni, as Exhibit 3, and entered on the docket as document number 33-3.

The Mediation Agreement purports to compel Debtor to pay certain sums. However the payee is not clearly identified[1]. Moreover, the mediation agreement gives Debtor the choice to either sell his property on the open market, or sell it to "Vanni's[2]" for an agreed-upon price. The mediation agreement also requires parties to execute a dismissal of all claims. Mediation agreement, ¶5. Finally, the mediation agreement compels the Association to turn over "whatever money (that) comes into the Association … directly to the Vanni's." Mediation agreement, ¶7.

Debtor then filed the instant bankruptcy petition. In his most recently amended Chapter 13 Plan, Debtor seeks to reject this mediation agreement as an executory contract.

### IV. LEGAL ANALYSIS

A. DEBTOR'S RIGHT TO REJECT AN EXECUTORY CONTRACT

Pursuant to 11 USC §1322(b)(7), a chapter 13 Debtor may reject an executory contract.

---

[1] Paragraph 1 of the mediation agreement states "Amir Safakish pays $75,000 no later than 4/1/19 … Mr. Safakish pays $275,000 upon sale."

[2] The only straightforward interpretation of this clause is that Chris and Don Vanni are jointly obligated to purchase the property.

## B. AN EXECUTORY CONTRACT IS DEFINED AS ONE WHERE "PERFORMANCE REMAINS DUE TO SOME EXTENT ON BOTH SIDES"

The Ninth Circuit has adopted Professor Countryman's definition of an executory contract: "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L. Rev. 439, 460 (1973); see also In re Robert L. Helms Construction & Development Co., Inc., 139 F.3d 702 at 705 (9th Cir., 1998) ("An executory contract is one on which performance remains due to some extent on both sides.")

## C. CREDITORS' OBLIGATION TO PURCHASE THE SUBJECT PROPERTY IS NOT AN OPTION

In Helms Construction, 9th Circuit ruled that an option, held by a Debtor, to buy real property, is not an executory agreement, unless at the time the petition was filed, Debtor had announced his intent to exercise its right under the option. Helms at 706.

But the Helms decision does not apply here because Helms deals with the legally accepted definition of an option, where the optionee has an option to buy an agreed-upon real property for an agreed-upon price, upon exercise of which, the optioner has an obligation to sell said property for said price. This is the broadly recognized and standard real estate option, which is generally defined as "a binding promise in which the owner of property agrees that another shall have the privilege of buying the property at a fixed price within a stated period of time. Black's Law Dictionary, Second Edition, citing McGregor v. Ireland, 121 P. 358 (Supreme Court of Kansas, 1912).

Here, the facts are reversed. Debtor, ostensibly as the optionee, would have an option to sell, and Creditors, ostensibly as the optioners, would have an obligation to buy. This "inside-out" arrangement is not an option agreement under California law.

By way of example, the California Supreme Court has ruled that "When by the terms of an agreement the owner of property binds himself to sell on specified terms, and leaves it discretionary with the other party to the contract whether he will or will not buy, it constitutes simply an optional contract." Steiner v. Thexton, 48 CAL. 4th 411, 226 P.3D 359, 106 CAL. RPTR. 3D 252, citing Johnson v. Clark (1917) 174 Cal. 582, 586.) See also Cyr v. Mcgovran 206 Cal.App.4th 645, at 650, 142 Cal.Rptr.3d 34 at ___ (2012) ("an option gives the optionee contractual rights to purchase the property.")

See also John R. Hetland, The California Land Contract, 48 Cal. L. Rev. 729 at 743 *et seq.* (1960) (discussing a real estate option contract's feasibility as a means of avoiding liquidated damages clauses).

Admittedly, in the realm of registered securities, there exists an instrument known as "put option" which grants the optionee the right, but not the obligation, to sell a security to an optioner. However, those instruments are governed by Federal securities laws. This attorney has found no authority for the proposition that California law recognizes an analogous option in the realm of real property.

The facts here are further complicated here because under the Mediation Agreement, Debtor does not have an option to sell. He has an obligation to sell. But if he can't sell on the open market, then Creditors have an obligation to buy.

D. ALL CREDITORS, INCLUDING THE ASSOCIATION, HAVE SUBSTANTIAL UNSATISFIED OBLIGATIONS UNDER THE MEDIATION AGREEMENT

As discussed, under the established Countryman definition, a contract is executory if both parties have material obligations, such that their failure to perform would excuse performance by the other party.

The mediation agreement places the following obligations on the parties:

1- Debtor must pay $75,000 by 4/1/19 (payee is not clearly identified),

FULLER LAW FIRM, P.C.
60 N. KEEBLE AVE
SAN JOSE, CA 95126
(408) 295-5595

2- If property is sold prior to 4/1/19, Debtor shall pay $275,000 less credit for the $75,000 mentioned above (payee is not clearly identified),

3- If Debtor does not sell the property by 4/1/19, Vannis shall purchase it for either $655,000 or $730,000 depending upon whether item 1 above is performed by Debtor,

4- Debtor shall prepay 12 months of assessments, plus an additional $7,000 by 4/1/19,

5- Parties shall execute a settlement agreement and dismiss all claims,

6- The Association shall pay all monies it receives to the Vannis.

It cannot be reasonably disputed that if any of the obligations set forth above is breached, performance by the other parties would be excused.

By way of example, pursuant to item 6 above, the Association has an obligation to forward all monies it receives to the Vannis. Now, if Debtor were to pay the Association the $75,000 required under item 1, and the Association were to abscond with the monies, clearly Vannis could not compel Debtor to perform item 3 and sell the property at $655,000.

Similarly, if Debtor were not able to sell the property, and simultaneously refused to prepay dues as required in item 4, clearly he could not compel Vannis to purchase the property for $730,000.

Likewise, if Debtor were to comply with all of his obligations, but Creditors refused to perform their obligation to dismiss their lawsuit (as required in item 5) then Debtor cannot be compelled to sell the property to Vannis.

In essence, this is an "all-or-nothing" agreement. All parties have obligations, including the Association, which, under the agreement, is obligated to turn over monies received to Vannis. Breach by any party of their obligations would relieve the other parties of their obligations.

/ / /

/ / /

### E. THE EFFECT OF REJECTION OF THE MEDIATION AGREEMENT IS TO HAVE THE STATE COURT DISPUTE PROCEED TO TRIAL

A key element of the Mediation Agreement is the obligation of the parties to dismiss their claims in state court.

By rejecting the Mediation Agreement, the dispute between the parties comes back to life, and must proceed to trial.

Pursuant to 11 USC §365(g), rejection of the executory contract is deemed a breach of the contract.

Once the executory contract is rejected, the only logical way to address the rights and liabilities of the parties is to allow the dispute to proceed to trial. Thereafter, if Creditors are prevailing parties, they would be entitled to breach damages.

### F. SINCE DEBTOR'S INCOME IS DERIVED FROM US ETA INC., LOSS OF THE SUBJECT PROPERTY WOULD DEPRIVE HIM OF THE ABILITY TO FUND HIS PLAN

The Mediation Agreement compels Debtor to sell the subject property, which is the operations center for US ETA Inc. (Schedule I, entered on the court docket as document number 16).

Loss of the property would necessitate relocating US ETA's operations, and reinvesting substantial funds in another location.

For this reason, maintaining this location is in the best interest of Debtor and the bankruptcy estate[3].

---

[3] In the prior hearing, the court granted the parties an option to discuss the effect of rejection of the mediation agreement on the estate. However, the court did not require this issue to be briefed. Given the discovery dispute that arose, this attorney was unable to fully brief this issue.

## V. CONCLUSION

There are times when the jurisprudential body has a clear definition for an instrument. But that is not always the case.

Here, Creditors' obligation to purchase the subject property, as set forth in the Mediation Agreement, may, at first blush, resemble an option. But in fact, it is not. Therefore, it is clearly an executory contract under the <u>Countryman</u> and <u>Helms Construction</u> definitions.

Debtor, therefore, is entitled to reject the Mediation Agreement.

Once the agreement is rejected, the obligation of the parties to dismiss the state court proceeding evaporates. The matter must go to trial.

If, after trial, Creditors prevail, they are entitled to breach damages.

Respectfully submitted,

DATED: June 28, 2018  THE FULLER LAW FIRM, P.C.

By: /s/ *Sam Taherian*
SAM TAHERIAN, ESQ.
Attorneys for Debtor

FULLER LAW FIRM, P.C.
60 N. KEEBLE AVE
SAN JOSE, CA 95126
(408) 295-5595