UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


In re                                    CASE NO. 18-50769 MEH 13

AMIR SAFAKISH,


_____/



TRANSCRIPT OF AUDIO PROCEEDINGS

Pages 1 to 37




DATE OF AUDIO PROCEEDING:  June 14, 2018

AUDIO FILE NAME:  5bk2018-50769_6142018-95012-AM




TRANSCRIBED BY:  Monyeen L. Black, CSR, CCRR, RPR, CRR
                 Certified Shorthand Reporter 10574

                 MBreporting
                 111 Deerwood Road, Suite 200
                 San Ramon, California  94583
                 (925) 989-6080

```
 1          ::: 5bk2018-50769_6142018-95012-AM :::

 2                        -oOo-

 3          THE COURT:  Line item 8, Amir Safakish.

 4          MR. TAHERIAN:  Good morning again, Your Honor.

 5  Sam Taherian for Amir Safakish, debtor, who actually is

 6  present in the courtroom.

 7          THE COURT:  Who is the debtor?

 8          MR. TAHERIAN:  Beg your pardon?

 9          THE COURT:  Who is the debtor?

10          MR. TAHERIAN:  Debtor is Mr. Safakish, who is

11  present in the courtroom behind me.

12          THE COURT:  Okay.

13          MR. REHON:  Good morning, Your Honor.

14          THE COURT:  Hold on one second.

15          MR. REHON:  Okay.

16          THE COURT:  I'm sorry.  I have been thinking

17  that it was Mr. Safakish.  I didn't realize it was

18  Mrs. Safakish.

19          MR. TAHERIAN:  No.  It's Mr. Safakish, the

20  gentleman right there.

21          THE COURT:  Oh, now I see you.  Sorry.  For

22  some reason I . . .

23          MR. TAHERIAN:  Mrs. Safakish is here as well.

24          MRS. SAFAKISH:  I have nothing to do with the

25  bankruptcy.
```

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 2 of 37

1      MR. REHON:  We are all here.

2      THE COURT:  All right, Mr. Taherian.

3      MR. REHON:  And Peter Rehon on behalf of the

4  moving parties, Your Honor.

5      THE COURT:  And I have parties on the phone?

6      MR. STEINBERG:  Yes.  Good morning, Your Honor.

7  Howard Steinberg of Greenberg Traurig appearing on

8  behalf of Morgan Hill Vineyard Owners Association.

9      MR. REHON:  And, Your Honor --

10      MR. WUNSCH:  And, Your Honor, John Wunsch on

11  behalf of Wells Fargo Bank.

12      MS. DUMAS:  And, Your Honor, Nanette Dumas just

13  listening in for the trustee.

14      MR. REHON:  And, Your Honor, I should also say

15  that Cindy Hamilton from the Greenberg firm is also here

16  and present in the courtroom on behalf of the

17  association, as is my client.

18      THE COURT:  Okay.

19      All right.  There are two matters that are on

20  calendar:  The motion for relief from stay and the

21  motion to dismiss.

22      In reviewing them, what's the underlying issue

23  for everything here is that debtor filed this bankruptcy

24  to seek to reject the mediation agreement as an

25  executory contract.  Debtor keeps saying it's an

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 3 of 37

1  executory contract on its face but has not provided any

2  analysis.  So my question is do the parties agree that

3  it's an executory contract that's capable of being

4  rejected?

5         MR. REHON:  We do not, Your Honor.

6         THE COURT:  That's what I thought the answer

7  would be.

8         MR. REHON:  And I also say, Your Honor, I

9  believe that's the association's position as well.

10         MR. STEINBERG:  Yes, Your Honor.  There's

11  absolutely no performance due on the association's side

12  at all under that agreement; so it's not an executory

13  contract.

14         THE COURT:  Okay.  So then -- so looking first

15  at the relief from stay matter.  The underlying state

16  court action was initiated by the debtor.  It, standing

17  alone, is not halted in any way by the bankruptcy

18  because debtor is plaintiff.  To the extent there are

19  counterclaims, that -- any actions taken on those

20  counterclaims are stayed.  So that's the only stay that

21  is in place at the moment.

22         Should debtor prevail on his desires in this

23  bankruptcy case, he will -- he will have filed the

24  bankruptcy; he will successfully reject the mediation

25  agreement; and then he will return to state court for

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 4 of 37

1  the litigation.  Because there is no way that litigation

2  belongs in bankruptcy court.

3       So the question is should debtor be allowed to

4  reject the contract before or after it returns to state

5  court.  The defense that's been provided numerous times

6  is that debtor has a right to reject an executory

7  contract in bankruptcy.  That's premised on an issue

8  that has not been resolved and is key to the analysis as

9  to whether abstention or granting of relief from stay is

10  appropriate.

11       Similarly, the motion to dismiss, it's more

12  focused on the issues as to whether the debtor is over

13  the Section 109(e) debt limits.  I have taken a look at

14  it.  There's some mixed things going on.  I have

15  questions.  It's not a razor-sharp clear answer at this

16  point.  So it strikes me that we just need to get to the

17  issue and determine if what the debtor seeks is actually

18  something that can be accomplished.  Because that

19  determines whether this case belongs to stay -- as a

20  reason to stay in bankruptcy or not.  So that's my

21  thinking.  I'll let the parties respond.

22       MR. REHON:  May I, Your Honor?

23       THE COURT:  Yes.

24       MR. REHON:  You are absolutely correct.

25  There's a dispute about whether it's an executory

1  contract.  There's certainly been no analysis by the

2  debtor suggesting that there is any benefit to the

3  estate even if the contract is rejected.  And I think if

4  we look at just the face of the agreement -- and make no

5  mistake, Your Honor, this was an agreement that was

6  reached.  And also make no mistake, this bankruptcy was

7  filed not on the eve of trial; it was filed on the eve

8  of judgment, which I think is an independent basis why

9  relief should be granted.

10         But setting that aside and focusing just on the

11  executory contract issue.  If you look at the face of

12  the agreement -- and there's no dispute of what the

13  terms of the settlement are.  I don't think any credible

14  argument can be made by the debtor that the estate would

15  be better off rejecting that contract.  There is just --

16  there is no basis for that if you look at the claims

17  that have been filed.  And, again, I don't expect you to

18  do that analysis right here on the spot.  But I want to

19  make that clear.  Because the debtor hasn't even tried

20  to explain how that would be.

21         If the contract is rejected, it doesn't go

22  away.  The debtor is in breach, and the parties would

23  still be able to enforce those material terms and get

24  damages from the debtor.  The damages are significant.

25         And then the question, which I don't know the

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 6 of 37

1  answer to -- and Your Honor might, but I don't -- is if

2  the contract provides for the dismissal of the

3  underlying lawsuit, then -- and the contract is

4  rejected, does the underlying lawsuit have to be

5  rejected or can the debtor be allowed to proceed in

6  state court notwithstanding the fact.  And I don't know

7  the answer to that.

8         THE COURT:  So, in essence, your argument is,

9  one, is this an executory contract that can be rejected;

10  and if it is, what are the actual consequences of

11  rejection given the terms of the agreement?

12         MR. REHON:  Right.

13         And there's the third prong which is Your

14  Honor's discretion and ruling as to whether or not the

15  debtor can reject it if, in fact, it is not in the best

16  interest of the creditors of the estate.  And that's the

17  real hub.  I mean, to me, that's one of the big issues

18  in this -- in this matter, because the debtor hasn't

19  explained why it would be -- why the estate would be

20  better off having him return to state court in pro per

21  prosecuting claims that don't amount to much of

22  anything.  And even under his analysis, his damages

23  isn't very much.  So he's much better off -- and the

24  creditors are much better off -- if the contract isn't

25  rejected.  But we don't believe it could be rejected in

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 7 of 37

1  any event.  And so that's really -- those are the

2  issues.

3       And I don't disagree with you in the sense that

4  nobody -- the debtor hasn't presented any credible

5  argument why this is an executory contract and why it

6  would be in the best interest of the estate.  But the

7  consequences would be significant to the estate, and it

8  would be significantly bad for the estate and for the

9  creditors.

10      MR. TAHERIAN:  May I, Your Honor?

11      THE COURT:  You may.  One second.

12      Are you finished?

13      MR. REHON:  And I really want -- and that deals

14  with the executory contract issue, Your Honor.  But I

15  think if you -- even setting that aside, if you look at

16  the Tucson Estate's factors and the debtor's

17  supplemental opposition, the debtor's supplemental

18  opposition is completely based on this executory

19  contract issue.  And the debtor gives short shrift or no

20  shrift, doesn't even address some of the most material

21  of the Tucson Estate's terms.  And one of the big ones

22  is forum shopping.  This is exactly what the debtor did.

23  The debtor did this.  And in Tucson Estates, the Ninth

24  Circuit gave weight to that and concluded that there was

25  likely forum shopping in that case.

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 8 of 37

1        So I think -- Your Honor, I think it would

2  still be appropriate to grant relief if only to

3  liquidate that claim.  And if the debtor wants to return

4  to bankruptcy after the claim is liquidated -- again,

5  it's a state law issue -- then the Court can so rule.

6        Now I'm finished.  Thank you, Your Honor.

7        MR. STEINBERG:  Your Honor, may I be heard?

8        THE COURT:  Yeah.  Go ahead.

9        MR. STEINBERG:  Thank you, Your Honor.

10        Just on this point.  When the Court does its

11  analysis on this issue, Morgan Hill is a homeowners

12  association.  And the only obligations arising out of

13  this mediation agreement relate to payment of monies to

14  Morgan Hill.  Morgan Hill does nothing under this

15  agreement except receive money.  So the notion that it's

16  an executory contract is Morgan Hill's [unintelligible].

17        Secondly, when I read the debtor's arguments

18  and papers, it sounds, to me, like he's conflating

19  rejection with termination of the contract as opposed to

20  a breach of the contract.  And that's just not the law.

21  And so, you know, it's puzzling to me in terms of how

22  the estate is in any way prejudiced in any way, shape,

23  or form if the debtor's right to delay -- right to

24  reject is delayed of the consequence of the judgment

25  being entered by the state court.  So, to me, the

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 9 of 37

1  argument doesn't make sense.

2       But I would like to get into the issue of the

3  merits of the motion to dismiss or convert.  Because I

4  think the course of conduct that's gone on here is very,

5  very troubling, particularly when you look at the timing

6  of when things were done and the shifting around of

7  claims that were scheduled or signed under penalty of

8  perjury, claims that are secured and when accumulated

9  put the debtor over the 109(e) limit suddenly become

10 unsecured in such amounts so they are just under the

11 limits of 109(e) on the secured and unsecured once you

12 rejigger the numbers with no explanation as to why

13 claims that were secured become unsecured, why claims

14 that were unsecured become secured, why the dollar

15 values change given that these were signed under penalty

16 of perjury.  It just does not pass any smell test

17 whatsoever.

18      And so I think, given the tardiness of the

19 filing, the timing of the filing, the failure to provide

20 any excuse to the Court for the delay in the filing were

21 the reasons for the changes.  To me, [unintelligible] of

22 that phase and warrants dismissal of this action.  This

23 is not an insolvent debtor.  This debtor's assets are at

24 least three times, if not four times, higher than the

25 liabilities.  So there's no reason given here as to why

1  this filing occurred, why it was necessary.

2         So I think the Court should strongly think

3  about dismissing this case, which would move the need to

4  address the rejection issue.

5         Thank you.

6         THE COURT:  You're welcome.

7         Mr. Wunsch, you're just listening in or do you

8  wish to be heard?

9         MR. WUNSCH:  Your Honor, I do not need to be

10 heard.  Thank you.

11        THE COURT:  All right.  Thank you.

12        Mr. Taherian.

13        MR. TAHERIAN:  Your Honor, does the Court want

14 me to address the motion to dismiss or the motion for

15 relief?

16        THE COURT:  I want you to first address my

17 discussion about the executory contract.

18        MR. TAHERIAN:  Okay.

19        THE COURT:  And then address the others as

20 well.

21        MR. TAHERIAN:  Very well.

22        On the executive contract, first of all,

23 counsel says, Well, there's no indication that its

24 rejection of the contract is beneficial to the estate,

25 therefore -- and I think counsel's arguing, therefore,

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 11 of
37

1  it's not executory.  The two are confusing situations.

2          THE COURT:  He's not arguing that.

3          MR. TAHERIAN:  He says it's not to the benefit

4  of the estate.  You know, Your Honor, it is to the

5  benefit to the estate to reject this contract because

6  the mediation agreement compels debtor to sell the

7  property.  This property is used as a factory for

8  producing power supplies.  If he loses that --

9          THE COURT:  I thought this was a condo.

10         MR. TAHERIAN:  It's a commercial condo.

11         THE COURT:  It's a commercial condo.  It's a

12  commercial condo in manufacturing?

13         MR. TAHERIAN:  It's manufacturing, yes.  It's a

14  commercial condominium in a commercial shopping center.

15         THE COURT:  Wait a minute.  There's a

16  manufacturing facility in the middle of a commercial

17  shopping center?

18         MRS. SAFAKISH:  It's not a shopping center.

19         MR. TAHERIAN:  It's a commercial structure,

20  Your Honor.

21         MR. SAFAKISH:  Industrial.  It's industrial.

22         MR. TAHERIAN:  It's a commercial structure,

23  Your Honor.

24         UNIDENTIFIED SPEAKER:  Industrial.  It's

25  industrial.  Industrial.  Light industry.

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 12 of
37

1          MRS. SAFAKISH:  No, it's not.  It's --

2          THE COURT:  Okay.  Enough.  Enough.  Enough.

3          MR. TAHERIAN:  It is --

4          THE COURT:  So --

5          MR. TAHERIAN:  It is --

6          THE COURT:  So --

7          MR. TAHERIAN:  So --

8          THE COURT:  Commercial --

9          MR. TAHERIAN:  It's separate --

10          THE COURT:  It doesn't sound particularly

11 unique.

12          MR. TAHERIAN:  It is unique.

13          THE COURT:  So move forward.  Your argument

14 is . . .?

15          MR. TAHERIAN:  Well, they have --

16          THE COURT:  Rejection is to the benefit of the

17 estate.

18          MR. TAHERIAN:  They want to keep this property

19 to invest --

20          THE COURT:  Then why did they agree to sell it?

21 You know what?  That's actually not relevant.

22          MR. TAHERIAN:  I'd be happy to discuss that.

23          THE COURT:  It's not relevant for today so

24 don't.  But it is the natural question that follows.

25          MR. TAHERIAN:  I understand.  And I have an

1  explanation.  But that would get on us on a tangent

2  that's unnecessary today.

3         They have invested substantially -- the kind of

4  work that they do, industrial power supplies and so

5  forth, they have invested substantially in this

6  industrial-commercial.  It's not a residential condo.

7  They have invested substantially.  They lose it, they

8  lose what the building generates.  ITA USA will lose the

9  ability to generate cash.  So it's in the benefit of the

10  estate to hang on to this property.

11         Second, as far as whether it's executory or

12  not, Your Honor, on the face of the mediation agreement,

13  my client can choose to do nothing, in which case moving

14  party's compelled to buy this industrial real estate

15  from my client.  And I can't think of a more clear

16  indication of an executive contract where one party is

17  obligated to buy out the other party's share.  And he

18  doesn't want to sell his property to moving party.  So

19  it's clearly an executive contract.  He wants to hang on

20  to that industrial property.

21         Now, going back to the allegations of bad

22  faith.  Moving party admits that this was filed on the

23  eve of a judgment.  Moving party went to state court on

24  ex parte 24-hour notice to get a judgment entered.  So

25  we had to move quickly.  Now, the Court can take

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 14 of
37

1  judicial notice.  Our firm never files skeletal

2  petitions.  We had to do it this time and it --

3          THE COURT:  So you filed a skeletal petition.

4  You get an extension of time to file schedules.

5          MR. TAHERIAN:  And it still wasn't right.  It

6  just threw a monkey wrench into how we do everything.

7  And this is probably the most complicated Chapter 13 we

8  have done, with properties in Japan, with liens in

9  Japan, debts to Japan, with bank accounts in the

10 Far East and Canada.  And we had to go out and -- so we

11 had to go back -- the one thing that -- to argue

12 everything is suspicious, the one thing they can never,

13 ever argue -- they cannot argue -- is there's any

14 attempt to deceive or any attempt to get unfair

15 advantage.  The original plan was a hundred percent

16 planned; the first amended plan was a hundred percent

17 planned; the second amended plan was a hundred percent

18 planned.

19          THE COURT:  They are not worried about the

20 payout to creditors.  The advantage that they are

21 arguing is rejection.

22          MR. TAHERIAN:  Correct.  But when they are

23 arguing that there's irregularities to the petition,

24 there's a reason why.

25          THE COURT:  So let's address your amendments to

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 15 of
                                        37

1  the schedule.  This is as good a time as any.

2          So fill me in.  I have looked at them and don't

3  quite understand some things.

4          MR. TAHERIAN:  We added three corporations and

5  a sole proprietorship.  A Japanese corporation, a Nevada

6  corporation, and a California corporation, those were

7  added in.  We valued the Ferrari and we added in --

8          THE COURT:  Most Chapter 13 debtors don't have

9  Ferraris.

10          MR. TAHERIAN:  Most of them do not.

11          MR. SAFAKISH:  He's not working for me.

12          MR. TAHERIAN:  Most of them do not.  Again,

13  this is the most difficult Chapter 13 we have done.  So

14  we had these bank accounts from the Far East and Canada

15  we had to list.

16          THE COURT:  So walk me through the schedule

17  changes.

18          So, for instance, why is Morgan Hill Vineyards

19  now listed as 134,000 secured and 134,000 unsecured?

20  What's the title debt and why is it split?

21          MR. TAHERIAN:  I'd be happy to.  Of course,

22  disputed claims count for 190 purposes.  Although we

23  dispute the claim, we disclosed it.

24          Now, they argued they have Prefecture lien

25  rights.  I dispute that.  We disclosed Prefecture lien

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 16 of
37

1  rights exactly as stated.

2          THE COURT:  What's the total claim?

3          MR. TAHERIAN:  I think 270.

4          THE COURT:  Why did you split it?

5          MR. TAHERIAN:  Because they are arguing that

6  130,000 is Prefecture secured and the other remainder is

7  not; and we listened to what they said and gave it to

8  them.

9          THE COURT:  Okay.

10          MR. TAHERIAN:  Even though we dispute it, we

11  decided in interest of transparency we disclosed it.

12          THE COURT:  Okay.  So why did you remove

13  Japanese cities -- City of Prefecture lien?

14          MR. TAHERIAN:  Well, it turns out -- under

15  Japanese law, this is not what we would call a lien by

16  American standards.  It is back-due taxes converted to

17  U.S. dollars.  That's the best number we have today.

18          THE COURT:  Okay.

19          And why was Susan Safakish changed from 60,000

20  to zero?  I'm just curious.

21          MR. TAHERIAN:  That's disclosed with the state

22  of financial affairs.  We discovered that Ms. Safakish

23  was paid off two days prior to the petition filing.

24  That's disclosed.  Now, it's preferential treatment, but

25  it's completely inconsequential because it's

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 17 of
37

1  hundred percent claim.

2      MR. REHON:  It was a $110,000 preferential

3  payment.

4      MR. TAHERIAN:  Completely inconsequential.

5      THE COURT:  What's the relationship?

6      MR. TAHERIAN:  Mrs. Safakish is debtor's wife.

7  Completely inconsequential.  Has no consequence

8  whatsoever to any administration of the estate.  Has no

9  consequence in the interest of the transparency.  Once I

10  discovered it, I disclosed it.

11      Again, the Court could take judicial notice.

12  We don't do skeletal petitions.  This threw -- moving

13  party's conduct threw a big monkey -- I can share this

14  with the Court.  We had to put the horse before the

15  carriage.  How we do things in our firm:  We get initial

16  consultation, we give them a list of documents to bring,

17  we email them a draft of the petition, we ask them to

18  confirm, then we have them sign off.  We had to do

19  everything backwards.  We didn't have an intake sheet to

20  start with.  That's why there's mistakes.  Everything's

21  been cured.  And none of the mistakes were

22  consequential.

23      Of particular importance, they make a big deal

24  that he didn't check off the box about being married.

25  Your Honor, there's no advantage to my client's lying

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 18 of
37

1  about being married or unmarried.  No advantage.  The

2  reverse is true.  The reverse is true.  If he's a single

3  man claiming to be married, it could enhance his

4  homestead exception.  There's no advantage to gain.

5  There's nothing they could argue that he attempted to

6  gain any unfair advantage -- is just their conduct that

7  drove us into a skeletal petition of the most

8  complicated Chapter 13 case.  I have never had a

9  Chapter 13 case with a Japanese corporation, Japanese

10  real estate, and a Ferrari and all that stuff.

11  Everything's before the Court.  It's cured.  I've got it

12  a hundred percent planned.  So the motion to dismiss

13  should be denied with prejudice, Your Honor.

14       As far as the executive contract, I will offer

15  to brief it.  We have to go back to state law on that

16  issue.  But, I believe, on its face as an executive

17  contract, that my client is compelled to sell; moving

18  party's compelled to buy.  That is an executive

19  contract.

20       THE COURT:  Just a reminder to everyone.

21  Executory contract goes back to the Countryman

22  definition in terms of how you determine if there's a

23  lot of case law in the bankruptcy context, whether it's

24  an executory contract capable of rejection.

25       MR. TAHERIAN:  And I've researched that.  And I

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 19 of
37

1 haven't found anything exactly on point.  So we have to

2 really develop this point of law.

3          THE COURT:  Yes.

4          MR. TAHERIAN:  And maybe use some analogies.

5          THE COURT:  Both sides.

6          MR. TAHERIAN:  Right.  I welcome the

7 opportunity.  The nerd in me loves this kind of stuff.

8 I welcome the opportunity to brief this, submit a big

9 brief on this.  But today we've got a motion to dismiss,

10 which I think should be overruled, and a motion to

11 abstain, which I think should be continued.

12          MR. REHON:  May I respond, Your Honor?

13          THE COURT:  You may.

14          MR. REHON:  Are you done?

15          MR. TAHERIAN:  I am.

16          MR. REHON:  Thank you.

17          Small points leading to a big point.  We filed

18 an ex parte motion to set a hearing.  We weren't seeking

19 a judgment on an ex parte basis.  We were asking for

20 just a hearing date.  And we tried to clear it with

21 Mr. Safakish, et cetera.  So there was no imminent harm

22 to the debtor.

23          Secondly, the settlement, as counsel has --

24 well, the terms are what they are.  But the -- one of

25 the material terms is that the debtor was required to

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 20 of
37

1  sell the unit on the open market.  And all of the

2  proceeds would go to the creditors.  So the -- and the

3  reason there is a provision that there would -- there

4  would potentially be a sale to the moving parties is

5  that if the debtor doesn't cooperate, doesn't do what he

6  is supposed to do and doesn't deliver on his promise to

7  sell on the open market, again, at the height of the

8  hottest real estate market we have seen in many years,

9  then he would have to sell it for a fixed price to the

10 moving parties.  But the benefit to the estate is

11 absolutely clear if the contract is not rejected.  All

12 of that money would go to the creditors.

13         So what he's proposing is rejecting the

14 contract and then going off in litigation to recover a

15 tiny, little bit of money for the creditors.  So that

16 makes no sense.  And there's no benefit.

17         THE COURT:  So to be clear:  He's not proposing

18 to fund a claim with litigation proceeds.

19         MR. REHON:  That's true.  But the point is, in

20 Your Honor's discretion -- well, I should say the debtor

21 has to show to reject -- even if it is an executory

22 contract, the debtor has to show that rejection would be

23 in the best interest of the creditors and the estate.

24 And here there's not even a question, I don't think, or

25 there shouldn't be a question that the debtor -- that

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 21 of
37

1  the estate would be worse off if the contract were

2  rejected.

3          But, in any event, one of the reasons -- and

4  it's interesting, the debtor says this is one of the

5  most complicated -- debtor's counsel says this is one of

6  the most complicated cases they've ever had.  And the

7  reason is this debtor doesn't belong in Chapter 13.

8  Chapter 13 debtors -- Chapter 13 is designed for people

9  who are honest and unfortunate.  And we can debate the

10  honesty of the debtor, but we cannot debate the

11  unfortunateness.  He is very well-off.  He does not

12  belong in this bankruptcy.  He does not belong enjoying

13  the benefits and the fruits of a Chapter 13.  And that's

14  the reason this case is so unusual because you never see

15  these cases.  You never see a debtor with these

16  resources and so little debt before you.

17          THE COURT:  Not in a Chapter 13.  I've seen it

18  in others.

19          MR. REHON:  And what it does, Your Honor, is it

20  underscores that this debtor is just gaming the system.

21  He is going to this forum to try to get some kind of

22  leverage and benefit over only one set of creditors who

23  are being sued by this debtor.  And it's -- based on the

24  law and the equities and good faith, Your Honor, this

25  case should either be dismissed or at a minimum we

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 22 of
37

1  should be granted relief from stay so this whole fight

2  could go to state court where it belongs.

3         THE COURT:  Mr. Taherian.

4         MR. STEINBERG:  Your Honor, may I be heard?

5         THE COURT:  One second.

6         Okay.  Mr. Steinberg first and then

7  Mr. Taherian.

8         MR. STEINBERG:  Thank you, Your Honor.

9         With respect to the dismissal consideration, I

10  heard Mr. -- I believe it was Mr. Taherian say that the

11  debtor has invested substantial amounts of money in

12  connection with the equipment for the commercial

13  condominium.  But when you look at the debtor's

14  schedules, whether you look at the original one or you

15  look at the amended schedules, there's nothing listed in

16  terms of any kind of equipment or -- or [unintelligible]

17  anything; nothing is listed there as being owned by him.

18  So if it was a substantial investment, one would think

19  that there would be a reference to it in these

20  schedules.  Perhaps -- giving him the benefit, perhaps

21  it's owned by one of the three corporations that he made

22  reference to that were just added to the amended

23  schedule.

24         But if you look at page 6 of the amended

25  schedules, the value of those entities is listed as

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 23 of
37

1  zero.  And so the notion that there's, you know, all

2  sorts of value here or whatever doesn't stand up when

3  you scrutinize the schedule.

4       I also -- I heard the excuse of some sort of a

5  rushed filing.  But I didn't hear Mr. Taherian explain

6  why there was a rushed filing with respect to schedules

7  that are done 30 days after the petition and why they

8  waited until after even the reply brief was done to file

9  amended schedules to come up with these numbers.  And as

10  you alluded to, Your Honor, the City of Prefecture,

11  which was a $200,000 secured claim, now becomes a

12  $20,000 unsecured claim as just one example when you

13  compare the schedules.

14       Now, you know, there's plenty of case law that

15  says that when you sign something like schedules under

16  penalty of perjury and there's false information, I

17  mean, that's ground to bar discharge.  So this is very

18  serious stuff.  And I haven't heard anything proffered

19  in terms of how it is that you come up with these

20  significant variations and jiggering of secured versus

21  unsecured to try to fall within these parameters.  I

22  would ask that you dismiss this case now.  But if you

23  don't -- I heard Mr. Taherian say that he wants you to

24  dismiss our motion to dismiss with prejudice, which, to

25  me, is an affront.  Because at a minimum if you're not

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 24 of
37

1  prepared to dismiss the case today, we'd certainly like

2  to have some discovery rights to understand why it is

3  that these numbers vary so much and whether or not this

4  individual's even eligible for Chapter 13 in the first

5  place.  Because if he's not, this case doesn't belong

6  here.

7        And so the notion that you play hide the ball,

8  you don't amend your schedules until after all the

9  briefing is done, you don't timely file an opposition to

10  the motion to dismiss and then say "Ah-ha, I've got you"

11  just doesn't sit right.  It's not the way that things

12  should be done.

13        Let me now turn to the stay relief.  And what

14  Mr. Taherian is doing is conflating the Vannis' claim

15  with Morgan Hill.  Morgan Hill is just a homeowners

16  association.  All there is under that agreement is an

17  obligation to get paid money.  There is nothing that is

18  done by Morgan Hill.  Morgan Hill does not buy anything,

19  does not buy any property.  It is just the homeowners

20  association.

21        And I have to tell you, it's quite a hardship

22  when no monies are coming in for a significant period of

23  time when there are expenditures here.  So it's not an

24  executory contract.  Rejection does nothing with respect

25  to the Morgan Hill claim.  And so this should go back to

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 25 of
37

1  state court.

2          There's been no explanation that I can

3  understand with any case authority or any proper

4  citation to statutes or whatever else that demonstrates

5  how the debtor would be prejudiced if the -- the

6  mediation agreement is reduced to a determination by the

7  state court that it's an enforceable agreement and a

8  judgment is entered to that effect.

9          Thank you.

10          THE COURT:  Mr. Taherian.

11          MR. TAHERIAN:  Couple quick points.  Counsel

12  points out that the ex parte notice was -- ex parte

13  notice in state court to set a trial at a hearing date,

14  not ex parte notice to have a judgment entered.  But we

15  were stuck in a situation.  We had 24-hour notice.  They

16  were going to go ex parte and shorten time.  We didn't

17  know how much time was going to be shortened.  For all

18  we knew, they were going to go at 8:30 to state court,

19  get shortened time and get a hearing within hours or

20  within days, which is trial by ambush.

21          THE COURT:  So the issue isn't the skeleton

22  filing?

23          MR. TAHERIAN:  Correct.

24          THE COURT:  The issue is the time after?

25          MR. TAHERIAN:  Correct.

1          So our law firm, their --

2          THE COURT:  Is it something new?

3          MR. TAHERIAN:  We had no intentions, Your

4   Honor.  We have a standard intake sheet; we didn't have

5   it.

6          Now, they are arguing, well, there's no

7   indication that investments were made in the subject

8   property.  Now, Schedule B discloses USA ITA.  And it

9   discloses that it's a California corporation, has assets

10  but liabilities exceed assets.  So it has assets.  And

11  we can provide a balance sheet of the corporation.  It

12  has a lot of assets, just that the assets exceed the

13  liability -- the liability exceeds the assets.  And

14  that's why the substantial investment in this property

15  is -- as far as debtor's schedule is concerned --

16  completely inconsequential.

17         Moving party argues that they -- one moving

18  party has no executory obligation.  It was a global --

19  purports to be a global --

20         THE COURT:  So continue your analysis.

21         MR. TAHERIAN:  Of which one?

22         THE COURT:  One moving party has no executory

23  obligation.  So what's the analysis that follows?

24         MR. TAHERIAN:  Well, clearly, one party has

25  obligations to buy the property.  The mediation

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 27 of
37

1  agreement -- and contrary to counsel's representation, I

2  don't see anything in the mediation agreement that

3  compels debtor to list the property.  It just compels

4  him to either sell it to him on market or sell it to

5  moving party.  So my client could, under this contract,

6  sit back and invoke his right to have moving party come

7  in with cash.

8            Now, one other moving party argues, Well, we

9  have no executory obligations.  But when you realize

10 this is a global mediation agreement, three parties, I

11 think this Court would be hard-pressed to do a piecemeal

12 relief or piecemeal abstention.  It's an all-or-nothing.

13 And I think we should be given an opportunity to brief

14 that issue on whether or not a debtor with this kind of

15 a convoluted mediation agreement -- tri-party mediation

16 agreement has a right to reject it or not.

17            Moving party also argues that this is forum

18 shopping.  And that is simply false.  They confused

19 "forum" versus "subject matter."  I brought that up.  I

20 have no preference.  I have complete faith in this Court

21 and the Santa Clara County Superior Court to hear my

22 arguments -- or debtor's argument.  I have no preference

23 for forum.  But the subject matter issue, this --

24            THE COURT:  Then why not grant relief from

25 stay?

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 28 of
37

1    MR. TAHERIAN:  Because the 664 relief which is
2  what they are seeking --
3    THE COURT:  So you do have a preference?
4    MR. TAHERIAN:  Not as to a forum; as to subject
5  matter.  I don't want them to have the right to file a
6  664 motion.  You know, I think I -- this Court --
7    THE COURT:  You have no problem returning to
8  state court if you are able to reject the mediation
9  agreement first is what you're trying to say?
10    MR. TAHERIAN:  I prefer this Court.
11    THE COURT:  I'm never litigating that.  So
12  under no circumstances am I litigating whether the condo
13  association fees are appropriate or not.  There's no way
14  that has any impact on a Chapter 13 bankruptcy case.
15    MR. TAHERIAN:  And if the Court decides that
16  this is -- the Court decides to grant relief without
17  664, without -- and grant relief to go back --
18    THE COURT:  I don't know that I -- well, never
19  mind.  I understand what you're saying.
20    MR. TAHERIAN:  If that's the case, then I would
21  like -- because the right to reject an executive
22  contract is a congressionally granted right for this
23  debtor.
24    THE COURT:  Again, I'm still getting to whether
25  this is an executory contract that's capable of

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 29 of
37

1  confirmation.

2          MR. TAHERIAN:  I'd like to brief that issue.

3          THE COURT:  So here's where I am.

4          MR. TAHERIAN:  Uh-huh.

5          THE COURT:  So here's where I am:  As to the

6  motion to dismiss, at this point it's not clear to me

7  that there's a clear Section 109(e) violation such that

8  dismissal is required.  There's an argument for bad

9  faith filing and that it should be dismissed.  The

10 Levitt factors are the four factors that normally come

11 into play.  Two of them are definitely applicable.

12 Whether debtor only intended to defeat state court

13 litigation, clearly applies and argues in favor of bad

14 faith.  Debtor's history of filing some dismissals, also

15 applicable in that there are no prior filings and

16 dismissals.  So they weigh against each other.

17         The question of whether egregious behavior and

18 whether debtor has sought to -- really question is

19 whether debtor has sought to unfairly manipulate the

20 bankruptcy code.  I think this comes again to is this an

21 executory contract.  So I think the only way -- so given

22 that, I'm not prepared to grant the motion to dismiss

23 today.  I can dismiss it -- I can deny it without

24 prejudice or I can continue it to trail further

25 proceedings.  I am assuming that moving parties would

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 30 of
37

1  prefer to trail rather than have to refile.

2        MR. REHON:  We would, Your Honor.

3        THE COURT:  Similarly, with the relief from

4  stay, which is really seeking abstention, it all depends

5  on whether this is an executory contract that can be

6  addressed in the bankruptcy case.  So I think I do have

7  to require the parties to tee up and address that, the

8  executory contract issue of whether the mediation

9  agreement is an executory contract that can be rejected

10 in bankruptcy.

11       Question two is, if so, what does the rejection

12 look like; what is the impact; and what are the --

13 what's the outcome of rejection.

14       Third, the parties are welcome to address

15 whether rejection's in the best interest of the estate.

16 Truthfully, that's not a -- normally, that's not a

17 determinative factor as long as creditors are going to

18 be paid.  Here it's a little different because the issue

19 is actually not with payment under the plan but

20 rejection.  You're welcome to address it.  I think the

21 first two questions are the key issues.

22       There are two ways to get this before me.  You

23 have -- the debtor has proposed rejection of the

24 executory contract through the plan.  I can set it for a

25 contested confirmation hearing on that issue and set a

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 31 of
37

1  briefing schedule, or I can require the debtor to file a

2  motion to reject the contract.  Either way, you're going

3  to have a briefing schedule.

4         Time needed preference -- and, furthermore, let

5  me say, Ms. Dumas, I believe there are other objections

6  to the plan pending; is that correct?

7         MS. DUMAS:  Your Honor, let me check.  I'm not

8  a hundred percent sure that there are.  Let me just --

9         THE COURT:  It actually may have been so

10  recently filed, it may not be.  So I'm looking at a

11  contested confirmation hearing on that limited issue.

12         Time?

13         Go ahead.

14         MR. STEINBERG:  Your Honor, I know Wells Fargo

15  filed an objection to the plan.  And I also know that if

16  you add up the payments in the plan -- the second

17  amended plan that are proposed, they don't come close to

18  paying off the amount of the debt.  So on its face, it

19  doesn't work mathematically.  But I think it would be

20  better off to tee up the issue of this rejection issue

21  before we get into further complicated issues of

22  confirmation.  Because there are a number of other

23  issues that are ripe with respect to confirmation such

24  as good faith, et cetera, that we'd like to explore if

25  it's going to go down that route.  So I think it would

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 32 of
37

1  be more efficient if we could just focus on this one

2  issue and then deal with confirmation later.

3          THE COURT:  I agree.  This, in essence,

4  depending on the outcome of this question, determines

5  whether this case is going any further here.

6          MR. TAHERIAN:  Very well.

7          MS. DUMAS:  And, Your Honor, just looking at

8  the trustee's objection filed on May 17th.  And it just

9  really boils down to pay advices.  So there's nothing --

10  no burning issues from the trustee's point of view.

11          MR. WUNSCH:  Your Honor, on behalf of Wells

12  Fargo Bank, we do have an objection as to the treatment

13  of the secured claim.  And I believe if the planning --

14  amended one would have to be amended further to deal

15  with that.  But it does make sense to hold that off

16  until the other issues are determined.

17          THE COURT:  Okay.  Thank you.

18          Do you want to set a contested confirmation or

19  do you want to tee it for motion?

20          MR. TAHERIAN:  I think it's better to tee up a

21  motion.  This is just one --

22          THE COURT:  Then it's a cleaner, single issue.

23          MR. TAHERIAN:  Uh-huh.

24          THE COURT:  Okay.  When do you want it to be

25  heard?

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 33 of
37

1    MR. REHON:  Well, Your Honor, I would only ask

2  that it be done as soon as possible.

3    THE COURT:  Normally, this -- this is the

4  motion that normally requires a 28-day notice period.

5  Frankly, I think all parties are going to want it for

6  the briefing schedule.

7    MR. TAHERIAN:  28 days, so that would put us in

8  mid-July?

9    THE COURT:  It would.  It would be a hearing

10  mid-July from when you file it.  I assume you don't have

11  it ready to file today?

12    MR. TAHERIAN:  We do not have -- we do not have

13  a motion to file.

14    THE COURT:  So available dates I have for

15  hearings are August 16th, August 23rd, August 30th, or

16  September 6th.

17    MR. REHON:  Was the first date the 15th?

18    THE COURT:  It's August 16th, actually.

19    MR. REHON:  16th, okay.

20    MR. TAHERIAN:  Your Honor, I have to have

21  surgery late August, mid-August.  I don't know what the

22  date's going to be; and then after I have to do

23  chemotherapy.  I have Stage II cancer.  It's under

24  control.  It was caught early.  I'm getting excellent

25  care.  The radiation, first round chemo were good, but

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 34 of
37

1  the tumor's not removed.  It's very, very high recovery

2  rate.  But I have to do a surgery, have to have it

3  removed in mid-August, late August.  I cannot -- on this

4  topic, I'll let the Court set a schedule.

5          THE COURT:  I'll tell you what I will do.  I

6  will let the parties meet and confer on a hearing date

7  and a briefing schedule.

8          MR. TAHERIAN:  Very well, Your Honor.

9          THE COURT:  So once you've done that -- and I'm

10  very sorry, and I wish you a very fast and healthy

11  recovery.

12         MR. TAHERIAN:  Thanks, Your Honor.

13         THE COURT:  Email Ms. Burtle [phonetic] with

14  the proposed hearing date and schedule, and we will work

15  with that.

16         MR. TAHERIAN:  Thank you, Your Honor.

17         MR. REHON:  We will do that, Your Honor.  Thank

18  you.

19         THE COURT:  Thanks.

20         So both the relief from stay and the motion to

21  dismiss are going to continue to whatever the hearing

22  date we set on that confirmation.  Okay?

23         MR. TAHERIAN:  Your Honor, could the Court make

24  available an audio of this hearing?

25         THE COURT:  Yes, it will be on the docket

1  tomorrow.

2          MR. REHON:   That would be great.   Thank you,

3  Your Honor.

4          THE COURT:   Thank you.

5          MR. REHON:   Appreciate your time.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    ::: –oOo– :::

2            I, MONYEEN L. BLACK, do hereby acknowledge:

3            That the foregoing transcript is a true and

4    correct account of the audio-recorded material and was

5    transcribed into typewriting under my direction and

6    supervision, except in the instances where the

7    transcript indicates "unintelligible."  And I certify

8    that said material is a full, true, and correct

9    transcript of the audio-recorded material.

10            I further certify that I am neither counsel for

11   nor related to any party in said action, nor in any way

12   interested in the outcome thereof.

13

14

15   DATED:  June 22, 2018.

16

17

18

19   _____
     MONYEEN L. BLACK, CSR, CCRR, RPR, CRR
20   California Certified Shorthand Reporter 10574
     California Certificate in Realtime Reporting 110
21   Registered Professional Reporter
     Certified Realtime Reporter
22

23

24

25

Case: 18-50769   Doc# 75   Filed: 06/29/18   Entered: 06/29/18 11:20:53   Page 37 of
                                        37