Entered on Docket
October 29, 2018
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes the order of the Court.
Signed: October 29, 2018

_____
M. Elaine Hammond
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re

Amir Safakish,

               Debtor.

Case No. 18-50769 MEH

Chapter 13

Date: October 23, 2018
Time: 1:00 p.m.
Ctrm: 3020

<u>Memorandum Decision Re:</u>
<u>Debtor's Motion to Reject Executory Contract and the Creditor's Motion to Dismiss</u>

    Debtor Amir Safakish ("Safakish") filed this chapter 13 bankruptcy case in order to reject a Settlement Term Sheet (the "Settlement Agreement") arising from a mediation of state court proceedings related to Safakish's obligations to an owner's association associated with a business condominium. The other parties to the Settlement Agreement are Donald and Sharon Vanni ("Vanni Creditors") and Morgan Hill Vineyard Owners' Association ("Morgan Hill") (collectively referred to herein as "Creditors").

    Safakish filed a motion seeking to reject the Settlement Agreement (the "Motion") (Dockets # 74, 80), the Vanni Creditors opposed the Motion (Docket # 77) as did Morgan Hill (Docket # 78). The Motion came on for hearing on August 13, 2018, after which the Court issued a further scheduling order. The Vanni Creditors submitted supplemental briefing opposing the Motion (Dockets # 98, 114). Safakish filed a supplemental brief in support of the Motion (Docket #111). On October 23, 2018, the court held a final hearing on the

1

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

Motion. The court has considered all the briefing, exhibits, and arguments of counsel at the hearings on this Motion.

The Vanni Creditors filed a Motion to Dismiss the Case (the "Motion to Dismiss") (Docket# 37) on May 17, 2018 and Safakish filed an opposition to the Motion to Dismiss (Docket# 56). The Motion to Dismiss came on for hearing on August 13, 2018, after which the Court issued a further scheduling order. The Vanni Creditors submitted supplemental briefing in support of the Motion to Dismiss (Dockets# 101, 113). Safakish filed a supplemental brief opposing the Motion to Dismiss (Docket# 110). Through their Motion to Dismiss, the Vanni Creditors seek dismissal of this case on the grounds that the plan and petition were not proposed in good faith.

This court has jurisdiction pursuant to 28 U.S.C. § 1334. A motion to reject an executory contract and a motion to dismiss are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A). This order constitutes the court's findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure Rule 52, made applicable by Federal Rule of Bankruptcy Procedure 7052.

Background:

Safakish filed suit in Santa Clara County Superior Court against the Vanni Creditors and Morgan Hill in 2016[1] claiming mismanagement of the property owners association and overcharging for service and maintenance. Creditors counterclaimed. The parties sought to resolve their dispute through a mediation held on February 14 and March 19, 2018. At the conclusion of the March 19 session, the parties, their attorneys, and the mediator signed the Settlement Agreement. The next day, Safakish expressed a desire to cancel or change the Settlement Agreement. On April 4, the Vanni Creditors gave notice to Safakish that they intended to apply to the Superior Court for an order to enforce the Settlement Agreement pursuant to California Code of Civil Procedure § 664.6. Safakish filed this chapter 13 case on that same day.

---

[1] Morgan Hill was first named as a defendant in 2017.

Legal Analysis re Motion to Reject:

Bankruptcy Code § 365(a)[2] authorizes a debtor to assume or reject an executory contract, subject to court approval. The Ninth Circuit adopted Professor Vern Countryman's definition of an executory contract in *Unsecured Creditors' Comm. of Robert L. Helms Constr. and Dev. Co. v. Southmark Corp. (In re Robert L. Helms Constr.)*, 139 F.3d 702 (9th Cir. 1998). As more precisely stated, a contract is executory if "the obligations of both parties are so unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other." *Griffel v. Murphy (In re Wegner)*, 839 F.2d 533, 536 (9th Cir.1988). The Settlement Agreement is short, consisting of seven paragraphs. In sum:

- Safakish is required to sell his unit in the condominium to a third party by November 1, 2019. If he fails to sell it by this date, it will be sold to the Vanni Creditors for $730,000, free and clear of all encumbrances. In addition, Safakish is to pay $275,000 to Morgan Hill on account of its lien for owners' association assessments. Safakish is further required to prepay 12 months of assessments.
- The Vanni Creditors are required to purchase Safakish's unit for $730,000 if he fails to sell it to a third party by November 1, 2019.
- Morgan Hill is to receive payment due on account of its lien and for on-going assessments.
- Each of the parties is required to dismiss its claims and provide mutual releases.

Morgan Hill correctly asserts that it is entitled to receive payment from Safakish under the Settlement Agreement but that receipt of payment does not render a contract executory. *See Pacific Exp., Inc. v. Teknekron Infoswitch Corp. (In re Pacific Exp., Inc.)*, 780 F.2d 1482 (9th Cir. 1986). Its remaining obligation is not due to Safakish, but rather requires it to pay any funds received on account of the settlement directly to the Vanni Creditors.

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9037 (referred to herein as the "Bankruptcy Code").

**1. Whether the *Helms* standard should be applied**

The Vanni Creditors argue that Safakish repudiated the Settlement Agreement prepetition, resulting in an anticipatory breach of the Settlement Agreement, thereby excusing any future performance. In sum, they assert that the court should apply the analysis developed by the Ninth Circuit in its review of an option contract to purchase real property in *Helms*, to determine whether the Settlement Agreement is executory. The Court ruled that not all option contracts are executory under § 365, instead the key inquiry is whether further performance is due from each party as of the petition date. Performance based on the discretion of the option holder to exercise his right is not sufficient. Instead the Ninth Circuit found the option holder must exercise the right but not have followed through yet in completing the remaining steps. *Helms*, 139 F.3d at 706.

A number of courts applied *Helms* to determine whether materially breached contracts may be executory for purposes of § 365. *In re Ebell Media, Inc.*, 2010 U.S. Dist. LEXIS 151886, *25; *Delconte v. Torrez* (*In re Delconte*), 2007 Bankr. LEXIS 4824, *19, 2007 WL 7535060; *see also In re Oklahoma Trash Control, Inc.*, 258 B.R. 461, 464 (Bankr. N.D. Okla. 2001). The parties agree that a number of courts have applied the *Helms* test in the event of a prepetition breach.[3]

    **a. <u>Did Safakish Repudiate the Settlement Agreement?</u>**

Anticipatory repudiation occurs when the promisor, before committing a breach, makes a positive statement indicating he "will not or cannot substantially perform his contractual duties." *Gold Mining & Water Co. v. Swinerton*, 23 Cal. 2d 19, 29 (1943). Under California law, courts have found that anticipatory repudiation of one party discharges the

---

[3] At the August 13th hearing, counsel for the Vanni Creditors asserted that *Helms* should apply here even in the absence of a prepetition breach. There is no support for this position in their opposition. The court is unaware of any legal authority to so provide.

obligation of the other party to perform. *Cent. Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501, 506 (2008); *First Nat. Mortg. Co. v. Fed. Realty Inv. Tr.*, 633 F. Supp. 2d 985, 998 (N.D. Cal. 2009) (applying California law), *aff'd,* 631 F.3d 1058 (9th Cir. 2011). An express repudiation "must amount to an unequivocal refusal to perform." *Taylor v. Johnston,* 15 Cal. 3d 130, 140 (1975). An implied repudiation occurs when the promisor "puts it out of his power to perform so as to make substantial performance of his promise impossible." *Taylor*, 15 Cal. 3d at 137. Further, refusal to perform the contract unless the opposing party consents to an additional term constitutes repudiation. *Gold Mining*, 23 Cal. 2d at 28. For example, in *Gold Mining*, the parties entered into a lease and before beginning any type of performance, the defendants chose to assign the lease even though it was prohibited. The defendants refused to perform unless the plaintiffs consented to the assignment. The California Supreme Court found that refusal to perform unless the opposing party agreed to a new condition was sufficient for repudiation. *Gold Mining*, 23 Cal. 2d at 28.

Whether repudiation occurred is a question of fact and intent. *Gold Mining*, 23 Cal. 2d at 28. The parties stipulated that there are no disputed issues of fact, and that this issue may be decided on the papers filed by the parties and any oral testimony offered at the hearing.[4]

The evidence provided establishes:

- The Settlement Agreement was entered into following an extended mediation session on March 19, 2018. Exhibit 2.[5]
- The next day, Safakish emailed the opposing parties and counsel stating: "Please consider this e-mail as my official request to cancel the settlement agreement signed yesterday" and

    " . . .I realized would like to cancel it or changes with the following . . . ." Exhibit 3.[6]

---

[4] Dkt. # 104.
[5] All exhibit references are to the documents submitted by the parties to establish the undisputed facts. Dkt #100, Exhibits 1-18.
[6] Dkt. # 100-1, p. 15.

5

- That same day, counsel for the Vanni Creditors informed Safakish that the Vanni Creditors did not intend to renegotiate the Settlement Agreement and requested that Safakish confer with his counsel and confirm that he would abide by the Settlement Agreement.  Exhibit 4.
- In an email to Chris Vanni, Safakish reiterated that he did not agree with the terms of the Settlement Agreement and indicated his interest in settlement discussions based on an offer made six months before.  Exhibit 5. The morning after that Safakish again emailed Chris Vanni and requested settlement discussions through a different process.  Exhibit 6.
- The day after that, now March 27, 2018, Rehon, counsel for the Vanni Creditors, emailed Safakish and the attorney who assisted him at the mediation, asserting the Settlement Agreement was binding and not subject to further negotiation.  This email also requested that Safakish confirm that he would reconsider his position and abide by the Settlement Agreement. Exhibit 7.
- Safakish responded by email to Rehon that day.  He explained why he believed that he had the ability to cancel or modify the Settlement Agreement and wanted to proceed to trial.  This email is clear that Safakish has not changed his position and will not abide by the Settlement Agreement. Exhibit 8.
- The parties then sought to present this dispute to the mediator.  Exhibit 12.  In his email to the mediator, Safakish asserted that the parties disagreed on whether the Settlement Agreement included a cancellation period and that "This clearly indicates that there was no similar understanding of the agreement by the parties therefore the agreement should be cancelled or modified."[7]

As documented in the emails, Safakish clearly and unequivocally informed the Vanni Creditors that he was cancelling the Settlement Agreement and had no intention to perform unless the terms were renegotiated.  The Vanni Creditors had no obligation to consent to any

---

[7] Dkt. # 100-2, p. 13.

additional or different terms.  Consistent with *Gold Mining*, Safakish expressly repudiated the Settlement Agreement.

Implied repudiation looks to a party's conduct and requires that the repudiating party make it impossible to perform.  *Taylor*, 15 Cal. 3d at 137.  Safakish has not yet made it impossible to perform—although he seeks to do so through this Motion.  As such, the evidence does not establish an implied repudiation of the Settlement Agreement occurred prepetition.

### b.  **Interpretation of correspondence as requested by Safakish**

Alternatively, Safakish asserts that his correspondence after the settlement conference should be viewed not as a repudiation but instead an attempt to continue negotiations pursuant to a 3-day grace period he understood would be part of the Settlement Agreement.[8] Reviewing the evidence through this lens, Safakish stated he was dissatisfied with the terms the day after the Settlement Agreement was signed and offered new terms.  Following that he emailed Chris Vanni that he could not agree to the terms of the agreement and sought further discussions or ADR.[9]  He informed the parties in multiple emails that if he had known that he could not cancel or modify the agreement he would not have signed it.[10]  As encapsulated by Safakish: "This clearly indicates that there was no similar understanding of the agreement by the parties therefore the agreement should be cancelled or modified."[11]  Adopting Safakish's interpretation of the Settlement Agreement and his correspondence, the parties did not reach a meeting of the minds.  Thus, no contract was formed—and there is no contract to be rejected.

---

[8] Whether a 3-day grace period was intended to be included in the Settlement Agreement is a disputed factual issue.  There is conflicting evidence on this point, most of which is hearsay and arguably prohibited pursuant to the mediation privilege.  As the evidence provided is not determinative, and the mediator may not be compelled to testify as to statements he made during the mediation, the court has no basis upon which to determine what representations were or were not made to Safakish.  For the purpose of this section of the analysis, the court assumes without deciding that Safakish had a valid reason to believe that a grace period for further negotiations or rejection applied.

[9] Dkt. # 100-1, p. 21 and 23.

[10] Dkt. # 100-1, p. 39, #100-2, p. 13.

[11] Dkt. # 100-2, p. 13.

c. **Effect of Repudiation**

Repudiation results in an anticipatory breach of the contract. It necessarily occurs prior to the time for performance under the contract and is a total breach. *Gold Mining*, 23 Cal. 2d at 29. Therefore, Safakish's breach of the Settlement Agreement occurred prepetition.

Under *Helms*, the test for determining whether a contract can be executory focuses on whether each party, as of the petition date, has outstanding obligations to perform to avoid materially breaching the contract. *Helms*, 139 F.3d at 706.

Here, Safakish expressly repudiated the contract by a clear unequivocal statement in his email of March 20, 2018. Exhibit 3. Moreover, all his follow up emails demonstrated a refusal to perform unless the other party consented to different terms. Due to Safakish's repudiation of the Settlement Agreement, he had already materially breached prior to the petition date.

Consequently, Vanni Creditors had nothing left to perform by the petition date. Their obligations were discharged by Safakish's repudiation.

Finally, Morgan Hill's remaining obligation to pay any funds received on account of the settlement directly to the Vanni Creditors does not render the Settlement Agreement executory.

As none of the parties had outstanding obligations to perform as of the petition date, the contract cannot be considered executory under the *Helms* analysis.

Only executory contracts may be rejected in bankruptcy pursuant to § 365.

2. **Whether rejection of the Agreement is in the best interests of creditors**

   a. **Application in Ch. 13**

Creditors assert that even if the Settlement Agreement is an executory contract, Safakish's attempt to reject it should be denied as not in the best interests of creditors. Whether rejection is in the best interests of creditors is an issue of fact. As an initial matter, the parties also dispute whether as a matter of law the best interests of creditors test applies to rejection of an executory contract in a chapter 13 case. It does.

Section 1322(b)(7) states that a plan may: "subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." Prior to 1984, the Ninth Circuit's decision in *In re Alexander*, 670 F.2d 885 (9th Cir. 1982), could be read to "preclude a bankruptcy court from exercising a power of approval over the rejection of a executory contract regardless of whether a Chapter 13 plan has been confirmed." *In re Meehan*, 59 B.R. 380, 384 (E.D.N.Y. 1986) (rejecting the *Alexander* interpretation of then applicable § 1322(b)(7)). However, the prefatory phrase "subject to section 365 of this title" was added by the 1984 amendments to the Bankruptcy Code, thereby abrogating *Alexander*.

Courts have primarily addressed the interplay between § 365 and proposal of a plan pursuant to § 1322 in the context of a chapter 13 debtor seeking to assume a lease through his or her chapter 13 plan. The majority view is that § 365 governs the assumption or rejection of contracts and leases in chapter 13 cases, but that the requirements for assumption or rejection may be satisfied through the plan process. *See In re Ford*, 159 B.R. 930, 931 (Bankr. W.D. Wash. 1993). The requirements of § 365 primarily relate to assumption (i.e., applicable time limits, prompt cure of prepetition default) but there is no statutory basis to limit § 365's language authorizing a debtor to assume or reject an executory contract "subject to the court's approval" solely to assumption.

**b.** **<u>Whether rejection is in the best interests of creditors in this Ch. 13</u>**

Parties stipulated that Safakish was solvent as of the commencement of his bankruptcy case and that the Safakish will be the primary beneficiary if the motion to reject is granted.[12] The claims bar date in this case expired on June 13, 2018. Only 5 claims were filed:

- Keypoint Credit Union, secured creditor – This obligation is current and unmatured;

---

[12] Dkt. # 104.

- Wells Fargo, secured creditor – After the claim was filed, the obligation was purchased for full value and the claim is now held by a family member of Safakish;
- Vanni Creditor and Owner's Association -- The parties to the Settlement Agreement; and
- IRS

It appears rejection will have no effect on secured creditor obligations. However, there will be significant harm to parties of the Settlement Agreement, and a potential impact on the IRS claim. Rejection would lead to the Vanni Creditors bearing the burden of funding the association until Safakish paid the claims in full.

Safakish argues rejection would benefit creditors by preventing an interruption of cash flow from his business. If compelled to abide by the Settlement Agreement Safakish will be required to sell the business location and relocate. Safakish asserts his business income will fund plan payments. However, the schedules and filed claims indicate a broader review is warranted. As set forth in the schedules, Safakish has over $2,000,000 in combined equity in his residence, business property, and a factory. In addition, he owns personal property worth an additional $417,000. Aside from the Vanni Creditors, the only unsecured claim filed in this case was filed by the IRS in the amount of $83,625. Thus, an interruption in business operations will not have a significant impact on Safakish's ability to fund a plan and this argument is not persuasive.

Accordingly, the Motion to Reject is DENIED.

Legal Analysis re Motion to Dismiss:

Through their Motion to Dismiss, the Vanni Creditors seek dismissal of this case on the grounds that the plan and petition were not proposed in good faith. § 1307(c) states that after notice and a hearing a court may, for cause, convert the case to Chapter 7 or dismiss the case, whichever is in the best interests of creditors and the estate. Bad faith is "cause" for dismissal under section 1307(c). *Jonathan Barnes Leavitt v. Carlos Soto (In re Leavitt)*, 171 F.3d 1219,

10

1224 (9th Cir. 1999). Courts apply the totality of the circumstances approach in determining whether cause to dismiss exists. The factors examined are:

> (1) whether the debtor "misrepresented facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner";
>
> (2) the debtor's history of filings and dismissals;
>
> (3) whether "the debtor only intended to defeat state court litigation"; and
>
> (4) whether egregious behavior is present

*Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999) (supporting citations omitted).

Applying the factors, courts have found that filing bankruptcy with the sole purpose of "trying to reject an executory contract or lease is bad faith, and the rejection will be precluded." *In re Silberkraus*, 253 B.R. 890, 906 (Bankr. C.D. Cal. 2000) (deciding whether conversion or dismissal was in the best interest of creditors and the estate), *subsequently aff'd,* 336 F.3d 864 (9th Cir. 2003).

**1. Does Bad Faith Exist to Justify Cause for Dismissal or Conversion**

**a. <u>Factors 1 and 3</u>**

Here, the Vanni Creditors state that Safakish misrepresented his marital status, did not disclose Morgan Hill's claim, and did not disclose his obligations under the Settlement Agreement. Safakish's marital status is not determinative and he did list Morgan Hill on his Amended Schedules E/F with its claim being disputed and mentioned a pending lawsuit with Morgan Hill in his Amended Statement of Financial Affairs.[13] However, the failure to disclose a disputed claim for the Vanni Creditors is difficult to justify in the context of this filing.

---

[13] Dkts. # 63 and 64.

In addition, the Vanni Creditors assert that Safakish manipulated the Bankruptcy Code by filing this petition for the sole purpose of dealing with a two-party dispute. When a Chapter 13 bankruptcy case essentially boils down to a two-party dispute and other creditors will not be impacted, there is no reason for the debtor to be in bankruptcy. *In re Mulivai*, 2013 WL 3936381, at *3 (Bankr. D. Haw. July 30, 2013) (finding bad faith where the debtor had no debt, was solvent and the bankruptcy case was a two-party dispute); *In re Sherman*, 2009 WL 1607856, at *3 (Bankr. D. Ariz. June 9, 2009) (finding bankruptcy case dealing with divorce agreement was a two-party dispute and state court was the more appropriate forum); *In re Maghanoy*, 2013 WL 3936395, at *3 (Bankr. D. Haw. July 30, 2013).

Safakish entered into a Settlement Agreement with the Vanni Creditors on March 19, 2018. As found herein, Safakish repudiated the contract prepetition. The Vanni Creditors notified Safakish via email at 9:38 a.m. on April 4, 2018, that a hearing would be held in state court on April 5 to shorten the time needed to have a hearing on enforcing the Settlement Agreement. Exhibit 16. Safakish then filed this case on April 4, 2018 at about 5 p.m.[14] The sole purpose of this bankruptcy is to reject the Settlement Agreement as Safakish believes it is invalid. As a result, Safakish seeks to defeat the state court litigation by gaining an advantage in this court. There appears to be no other need for Chapter 13. Accordingly, these factors weighs in favor of a bad faith filing.

**b. Factor 2**

This factor is not applicable as this is the first filing by Safakish.

**c. Factor 4**

As discussed above, only five claims were filed by creditors. The most significant impact is on the parties of the Settlement Agreement. The Wells Fargo claim was purchased by a family member, the obligation to Keypoint Credit Union is current and unmatured, and there is a comparatively small claim by the IRS.[15] Accordingly, this factor weighs in favor of a bad faith filing.

---

[14] Dkt. # 1.

[15] This is a small claim in comparison to Safakish's total available assets.

Reviewing the facts presented, the court finds the totality of circumstances support a finding of bad faith and warrant dismissal under § 1307(c).

**2. Whether Dismissal or Conversion is in the Best Interest of the Estate**

The court further finds that dismissal is in the best interest of creditors and the estate as there is no demonstrated need for bankruptcy.

Thus, the Motion to Dismiss is granted.

**Conclusion:**

For the reasons stated herein, an order denying Safakish's motion to reject and granting the Vanni Creditor's motion to dismiss are entered contemporaneously herewith.

**END OF MEMORANDUM DECISION**

**COURT SERVICE LIST**

**Via ECF:**

All ECF Recipients